Paul D. POLEN, Petitioner,

v.

**POLICE AND FIREMEN'S RETIREMENT AND RELIEF BOARD,** Respondent.

No. 82–1376.

District of Columbia Court of Appeals.

Submitted Aug. 23, 1983.

Decided Sept. 16, 1983.

---

Robert Cadeaux, Washington, D.C., was on the brief for petitioner.

Judith W. Rogers, Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Edward E. Schwab, Asst. Corp. Counsel, Washington, D.C., were on the brief for respondent.

Before MACK and TERRY, Associate Judges, and REILLY, Chief Judge, Retired.

PER CURIAM:

This case comes before the court on a petition for review of an order of the District of Columbia Police and Firemen's Retirement and Relief Board, retiring petitioner from the Metropolitan Police Department by reason of disability neither incurred nor subsequently aggravated in the performance of duty as a policeman, pursuant to D.C.Code §§ 4–615, –616 (1981). We affirm.

Petitioner initially requested disability retirement at a hearing before the Retirement Board on September 17, 1981. The disability claim was based on back difficulties, allegedly exacerbated by a severe back injury sustained by petitioner on April 18, 1981, while serving as a member of the United States Army Reserve at Camp A.P. Hill in Virginia. At the hearing petitioner's counsel stipulated that the injury "occurred off duty" and that an on-duty retirement was not being sought. The Retirement Board denied petitioner's request, on the ground that petitioner's injuries did not permanently disable him for useful and efficient service.

Petitioner was subsequently placed on leave without pay status, and did not return to work except for approximately three weeks of light duty (performing office work). On June 7, 1982, while at work in a limited duty position, petitioner's back "went out" on him and he was hospitalized for treatment. Petitioner thereafter reapplied for disability retirement.

Following a hearing on July 15, 1982, the Retirement Board found petitioner disabled for useful and efficient service and ordered his retirement. The retirement was effected pursuant to §§ 4–615 and –616, for disability not incurred in the performance of duty as a policeman. Petitioner now contends that the Retirement Board erred in interpreting § 4–616 to exclude an on-duty aggravation of an off-duty injury, and that he is thus entitled to the higher annuity afforded by retirement under § 4–616. We disagree.

■ We note initially that there is nothing in the record to indicate that petitioner's 15 days of light duty resulted in a worsening of his condition. However, turning to the legal issue, it is clear that § 4–616, as modified by the 1979 amendments, now applies only to on-duty aggravation of injuries incurred in the performance of duty. This court has made this point unequivocally in a recent case:

> We note that a recent amendment to § 4–527 [now § 4–616] "precludes disability retirement benefits based on aggravating injuries unless the pre-existing condition aggravated by the on-the-job injury was itself incurred in the performance of duty."

*Perry v. Police & Firemen's Retirement & Relief Board,* 451 A.2d 88, 89 n. 3 (D.C. 1982), quoting *Hawkins v. District of Co-*

*lumbia,* 108 Wash.D.L.Rptr. 729, 736–37 n. 11 (April 23, 1980).[1]

■ There is nothing in the record to indicate that petitioner's underlying injury was incurred in the performance of duty; to the contrary, petitioner's counsel stipulated at the September 17, 1981 hearing that the injury was incurred off duty. Petitioner's case falls wholly outside the scope of § 4–616. Therefore, it is ordered that the administrative decision from which review is sought be

*Affirmed.*

## APPENDIX

[Brief for Respondent—Excerpts]

Congress, in the 1979 Amendments, amended what has become known as the "aggravation clause" by removing all District of Columbia employees (i.e., police officers and firefighters), from its coverage. The "aggravation clause" remains in effect for members of the United States Park Police force, the Executive Protective Service, and the United States Secret Service Division. See, D.C.Code 1981, § 4–616(b). We show below that this amendment was to effect the precise change in law noted in *Perry* and by the Board in this case.

The changes in law were made due to the tremendous cost of treating cases of "aggravation", like this one is alleged to be, as performance of duty disabilities.[5] There was also serious abuse of the "aggravation clause" under which an officer could easily make it appear that non-duty injuries were made worse in the performance of duty. Change was recommended by the Nelson Commission and through repeated requests by District officials to the Congress before it acted in 1979. For a fuller understanding of the effect of the 1979 Congressional amendments, it is necessary to discuss the comprehensive retirement legislation enacted in 1957, the various amendments to that legislation, and the reasons for those amendments.

In 1957, Congress overhauled police and firefighters retirement legislation that had been in effect since 1916, when it enacted the present retirement legislation. See, Pub.L. 85–157, 71 Stat. 391 (1957). The section of this law that related to performance of duty retirement, provided:

> Whenever any member is injured or contracts a disease in the performance of duty or such injury or disease is aggravated by such duty at any time after appointment and such injury or disease or aggravation permanently disables him for the performance of duty, he shall upon retirement for such disability, receive an annuity.

It was codified as D.C.Code § 4–527 and is now identical, in relevant respects, to D.C. Code 1981, § 4–616(a). Authoritative, administrative, judicial and legislative constructions of this provisions all establish that Congress did not intend this section to cover disabilities resulting from the on-duty aggravation of non-duty illnesses or injuries.

On July 27, 1959, the Corporation Counsel, upon request of the Commissioners, issued an opinion regarding the construction to be given this provision (now § 4–616(a)), as enacted in 1957. He construed the section as providing for disability retirement in only two situations. Those were where:

\* \* \* \* \* \*

> a. a member has been injured or has contracted a disease in the performance of duty which permanently disables him for the performance of duty.

\* \* \* [or]

---

**1.** We feel that reliance on the *Perry* decision is sufficient for our purposes here. However, because the government has filed comprehensive documentation with respect to the history and purposes of the legislation in issue and its amendments, we are attaching a copy of the relevant portion of the government's brief as an appendix.

**5.** Other changes were to place several restrictions on the ability of an officer to claim that a disability resulted from an on-duty aggravation of a previous on-duty injury that was not in itself disabling. See, D.C.Code 1981, § 4–616(d).

b. the member was injured or contracted a disease in the performance of duty; that such injury or disease was not sufficient to permanently disable him for the performance of duty; that after being restored to health he was returned to duty and thereafter, in the further performance of duty, the injury or disease originally contracted in the performance of duty was aggravated by such further performance of duty so as, at that time, to permanently disable him for further performance of duty.

Thus, the section was construed as not covering the aggravation of non-duty illness or injury.

Effective October 23, 1962, Congress amended § 4–527 (now § 4–616(a)) by enacting what is now known as the "aggravation clause" under which disabilities caused by the aggravation of non-duty conditions, illness, or injury were treated as disabilities incurred while performing duty. Pub.L. 87–857, 76 Stat. 1133.[6] The Committees of both Houses of Congress recognized that this changed existing law. The Committee Reports stated:

The purpose of this legislation is to create an additional category of service-connected disability which will enable the member to retire if an injury or disease contracted other than exclusively in the performance of duty is so aggravated by the performance of duty as to disable the member from further duty, and to place the burden of proof on the Government that such duty did not aggravate the injury or disease contracted (it may or may not have been incurred or contracted in the performance of duty).

\*    \*    \*    \*    \*    \*

A member retiring under this proposed legislation will receive the same annuity as if there was no doubt of the disability having resulted exclusively in the performance of duty.

H.Rept. No. 892, 87th Cong., 1st Sess. (1961) p. 1; S.Rept. No. 2271, 87th Cong., 2d Sess. (1962), p. 1.

Following this enactment of the aggravation clause, in *Zangardi v. Tobriner*, 121 U.S.App.D.C. 141, 348 F.2d 370 (1965), the Court construed § 4–527 as it existed prior to the amendment. There, a police officer was retired, under D.C.Code, 1973, § 4–526 (now § 4–615), for a disability found not to have been contracted in the performance of duty. However, the District conceded that the disease which caused his disability had been aggravated by the performance of duty. The officer argued that the language of § 4–527 (now § 4–616(a)), prior to the amendment adding the aggravation clause, was broad enough to entitle him to retirement at the higher rate under § 4–527 for a "performance of duty" disability. (Footnote omitted.) The court rejected this argument, holding that:

In 1962 subsequent to appellant's retirement, and therefore not applicable to his case, a new subsection was added to the statute by Congress. It does provide for annuity at the higher rate *when disability is attributable to aggravation,* due to the performance of duty, of a disease not contracted in the performance of duty. D.C.Code § 4–527(2) (Supp. IV, 1965).

On the basis of the language of the 1961 D.C.Code § 4–527, as for many years it was administratively interpreted contrarily to appellant's position, followed by explicit Congressional acquiescence in

**6.** The Amendment provided:

"In any case in which the proximate cause of an injury incurred or disease contracted by a member is doubtful, or is shown to be other than the performance of duty, and such injury or disease is shown to have aggravated by the performance of duty to such an extent that the member is permanently disabled for the performance of duty, such disability shall be construed to have been incurred in the performance of duty. The member, shall upon retirement for such disability, receive an annuity computed at the rate of 2 per centum of his basic salary at the time of his retirement for each year or portion thereof of his service: Provided, that such annuity shall not exceed 70 per centum of his basic salary at the time of retirement, nor shall it be less than 66⅔ per centum of his basic salary at the time of retirement."

such interpretation when in 1962 Congress amended Section 4–527 so as clearly to authorize the higher annuity for such aggravation as here occurred, we conclude that the retirement pay of appellant was properly computed under Section 4–526 rather than under Section 4–527 as it read prior to the 1962 amendment. [*Id.* at 142, 348 F.2d at 371]. (Emphasis added.)

Thus, the Court construed § 4–527 (now § 4–616(a)) as the Corporation Counsel and the Congress had done.

Experience following enactment of the "aggravation clause" was not good from a fiscal standpoint. The Nelson Commission reported that, after the clause was enacted in 1962, the number of disability retirements from the police and fire departments increased dramatically, and for several years in succession disability retirements were 90% or more of the total number of retirements. II House Doc. No. 92–317, 92nd Cong., 2d Sess. 532 (1972); III House Doc. 92–317, 255. This situation caused the Nelson Commission to state that:

As the data indicate, there clearly appears to be a disproportionate number of disability retirements from the Police and Fire Departments, and these retirements place a heavy burden upon the P & F Retirement Program. In general, disability retirements cost the P & F program approximately 30 percent more than do optional retirements (66⅔ percent v. 50 percent of base pay). (The District sustains a further revenue loss through the tax-free proviso for those retirees that reside in the District.) As the data show, certain measures taken in FY 71 have operated to effect a better balance between the optional and the disability retirements, but disability retirements still appear to be disproportionately high.

Congress in enacting Public Law 87–857 may have inadvertently contributed significantly to this problem. D.C.Code, sec. 4–521 et seq., was amended in that law by adding the paragraph referred to as the "aggravation clause" (D.C.Code,

sec. 4–527(2)). This clause, especially as interpreted by the courts, enables a policeman or firefighter to retire for disability if the "proximate cause of an injury incurred or disease contracted by a member is doubtful; or is shown to be other than the performance of duty, and such injury or disease is shown to have been aggravated by the performance of duty to such an extent that the member is permanently disabled for the performance of duty * * * ". [II House Doc. No. 92–317 *supra* at 532.]

These considerations led the 93rd Congress to enact legislation to "assure that administrative procedures [in disability cases] are tightened." S.Rept. No. 93–1077, 93rd Cong., 2nd Sess. 8 (1974). To that end, Congress amended § 4–527 (now § 4–616) to place the burden of proof on the applicant for disability retirement where the Board of Police and Fire Surgeons fails to recommend such retirement. Pub.L. No. 93–407, § 121(c), 88 Stat. 1036, 1040. The House Committee report states:

Part 3 of Title I contains two provisions which can be expected to lower the rate of disability retirements. The first is to require that the burden of proof for an officer who seeks retirement without the concurrence of the Board of Police and Fire Surgeons is on the officer himself. Approximately 40% of the disability cases have generally established the rule that regardless of who initiates the case, the burden of proof that the disabling condition was not incurred in or aggravated by the performance of duty rests solely with the Police and Firemen's Relief Board. It is anticipated that the bill's requirement will have the effect of reducing the number of persons seeking their own disability retirement. [H.Rept. No. 93–1203, 93rd Cong., 2nd Sess. 8 (1974).]

Legislation to repeal the aggravation clause was introduced in the 94th, the 95th and the 96th Congress due to the high cost of the retirement system. In each instance, the proposed legislation would simply have

restored the language of § 4–527 (now (§ 4–616(a)) to the original language employed in the 1957 Act. H.Rept. 94–1728, 94th Cong., 2nd Sess. 50–51 (1976); H.Rept. 95–1713, 95th Cong., 2nd Sess. 38–39 (1978); S.Rept. 95–869, 95th Cong., 2nd Sess. 39–40 (1978); H.Rept. 96–115, 96th Cong., 1st Sess. 50 (1979); S.Rept. 96–237, 96th Cong., 1st Sess. 37–38 (1979). The 95th Congress passed a bill which would have repealed the clause; however, the President vetoed the legislation on grounds unrelated to the aggravation clause. S.Rept. No. 96–237, *supra* at 8–10; H.Rept. No. 96–115, *supra* at 6. The legislation passed by the 96th Congress was signed into law. Pub.L. 96–122, § 122, 93 Stat. 866.

Mayor Barry and former Mayor Washington testified at the Congressional hearings that the District of Columbia sought repeal of the aggravation clause because, under it, a non-duty disabling injury is treated as a performance of duty injury. In his prepared statement, Mayor Washington stated that:

> *The elimination of the aggravation provision,* which treats a non-duty related injury as a performance of duty disability, should significantly reduce the number of disability retirements in future years * * *. [Hearings on 51813, 52316, and H.R. 6536 before the Subcommittee on Governmental Efficiency and the District of Columbia of the U.S. Senate Committee on Governmental Affairs, 95th Cong., 2d Sess. (Feb. 29, (sic) 1978), p. 27, emphasis in original].

And see *Id.* at p. 9, 14, 28; Hearings on H.R. 2465 and 6536 before the Subcommittee on Fiscal Affairs of the House Committee on the District of Columbia, 95th Cong., 1st Sess. (March 23, 1977), p. 205; Hearings on H.R. 3560 and H.R. 3939 before the Subcommittee on Fiscal Affairs of the House Committee on the District of Columbia, 96th Cong., 1st Sess. (May, 1979), p. 159.

The committee reports state that the aggravation clause was being repealed because it was subject to abuse and due to the high cost of the pension program. The Senate Report states that the purpose of the bill was "to provide disability retirement benefits which compare with other cities and provide the annuitant a sufficient retirement allowance while keeping pension costs at a level the District can afford." S.Rept. 96–237, *supra* at 1. The Report states, regarding the aggravation clause, that:

> Particularly vulnerable to abuse in current law is the aggravation clause, which allows a person who incurs an injury on duty or off duty, that is aggravated by continued duty, to retire on full disability pay.
>
> An analysis of disability retirements shows that in 1969, 85 percent of firefighters and 69 percent of police retired on "aggravation" of previous injuries. In calendar year 1977, 20 percent of the disability retirements were for aggravation during duty of a preexisting injury which alone was not sufficient for disability retirement.
>
> *The bill eliminates the aggravation clause for all employees, current and future, except for aggravation of a previous on duty injury if the member has submitted a report and documentation to the Board of Police and Fire Surgeons within 7 days of the injury.* [*Id.* at 5.] (emphasis added)

And see H.Rept. 96–155, *supra* at 11–13. In regard to cost, the Senate Committee found:

> Pension costs for police and firefighters will be 57 percent of payroll in 1979, and under current law would exceed payroll by 1999. To pay more in retirement benefits than in active-duty salaries would be untenable for any city and impossible for the District because of its limited tax base. Nonetheless, as the Nation's Capital, the District must maintain large uniform services and assure high professional standards through quality recruitment and stable and prudent compensation and retirement benefits. Essential to these objectives is the need for a reform of present systems to eliminate costly abus-

es and establish sound funding that will permit the District to sustain trained and skilled public services. * * * [S.Rept. 96–237, *supra* at 4].

The House found similar abuses:

Of the total number of retirements in 1969, 99 percent of the firemen and 98 percent of the police were retired on disability. Between the years 1971 and 1975 disability retirements varied between 46 percent to 31 percent in New York City while Los Angeles remained fairly constant at 15 percent. As Professor Bernard Jump, of Syracuse University stated in his testimony before the subcommittee in the 94th Congress, "our analysis of District police and firefighter disability rates suggest that even the least suspicious among us might wonder whether all the disability awards are justified."

As indicated by following the graph, the number of disability retirements did decrease after passage of Public Law 91–509 which liberalized eligibility for normal retirement from age 50/20 years service to 20 years service with no age requirement. This correlation reinforces the committee's conclusion that disability retirements are often fraudulently claimed when normal retirement is not available. Despite the rise in the number of normal retirements, disability retirements in 1975 averaged 60 percent for the

two departments, and only 44 percent in 1978. [H.Rept. 96–155, *supra* at 11].

Repeal of the clause was the remedy:

Present law allows a member who incurs an injury on-duty or off-duty that is aggravated by his duty to retire on full disability pay. An analysis of disability retirements shows that in 1969, 85 percent of firemen and 69 percent of police retired on "aggravation" of previous injuries.

H.R. 3939 repeals this clause but allows a disability retirement for aggravation of a previous on-duty injury if the member has submitted a report and documentation to the Board of Police and Fire Surgeons within 7 days of the original injury. [*Id.* at 12–13].

Accordingly, Congress has restored for District employees, the original language of § 4–527 (now § 4–616(a)) which, as shown above, has long been interpreted by all branches of the Government not to provide benefits in aggravation cases.