Theodore H. KIRKWOOD, Petitioner,

v.

DISTRICT OF COLUMBIA POLICE & FIREMEN'S RETIREMENT AND RELIEF BOARD, Respondent.

No. 82–1610.

District of Columbia Court of Appeals.

Submitted Oct. 19, 1983.

Decided Nov. 17, 1983.

---

Robert Cadeaux, Washington, D.C., on brief for petitioner.

Judith W. Rogers, Corp. Counsel, at the time the brief was filed, Charles L. Reischel, Deputy Corp. Counsel, and Leo N. Gorman, Asst. Corp. Counsel, Washington, D.C., on brief for respondent.

Before FERREN and BELSON, Associate Judges, and PAIR, Associate Judge, Retired.

FERREN, Associate Judge:

Petitioner, a former member of the Metropolitan Police Department, challenges a decision and order of the District of Columbia Police and Firemen's Retirement and Relief Board (the Board), retiring him on grounds of a psychological disability that the Board found was not incurred in the performance of duty. Petitioner claims that the Board's finding regarding the etiology of his disability was not supported by substantial evidence in the record and further argues that this court should interpret D.C.Code § 4–616 (1981) broadly to include certain disabilities that do not stem from on-duty injuries. We affirm.

The record indicates, without contradiction, that petitioner had a difficult adolescence and that he left school in the tenth grade to join the Marine Corps. He served in the Marine Corps from 1960 to 1968, with ten months of this time spent on a combat tour of duty in Viet Nam. After returning from Viet Nam, petitioner was promoted to sergeant, a rank he retained until he left the service.

In 1968, petitioner joined the Prince George's County Police Department where he worked for approximately one and one-half years. Petitioner's Metropolitan Police Department personnel record indicates that he was discharged from this job following an incident in which he "blew his stack with the Chief's secretary" and "cast aspersions on the leadership of the Department." After working for a short period as an assistant security manager in a department store, petitioner applied for a position with the Metropolitan Police Department. A medical personnel panel initially rejected this application. The bases for the rejection were the episode leading to petitioner's termination from the Prince George's County Police Department, two instances of insubordination listed on petitioner's Marine Corps disciplinary record, and a psychiatric examination which revealed that petitioner "has a chip on his shoulder about authority." The Department later overruled this rejection.

Petitioner was appointed to the Metropolitan Police Department in August 1970. After nine years of service as a private, he was promoted to the rank of sergeant. On May 4, 1982, petitioner filed a report in which he described the anxiety, stress, depression, fear, and persistent nightmares that he experienced as a result of his police duties. This report related numerous on-duty incidents which had triggered flashbacks and caused petitioner to relive the sights, sounds, and emotions of his Viet Nam experience. Although petitioner started experiencing psychological difficulties of this type shortly after his return

from Viet Nam, he claimed that the frequency and intensity of such experiences increased after his promotion by the Department to sergeant. He stated that his condition was deteriorating and requested a revocation of his police powers.

This request was granted and the Board of Police and Fire Surgeons recommended to the Board that petitioner be considered for disability retirement based on a diagnosis of "Generalized Anxiety Disorder" and "Dysthymic Disorder." At a hearing held September 2, 1982, the Board reviewed petitioner's records, including a June 4, 1982 report by psychiatrist Dr. Lawrence A. Brain, and a July 13, 1982 report by psychiatrist Dr. Jeffrey Deitz. The Board also listened to the testimony and cross-examination of Dr. Deitz and petitioner.

The Board found petitioner to be disabled with a psychiatric condition, the symptoms of which included "persistent anxiety associated with motor tension and difficulty in relaxing, autonomic hyperactivity .... a general feeling of apprehension with anxiety, worry, rumination and fears ..., vigilence [sic] and hyperalertness associated with irritability, impatience and insomnia." (quoting report of Dr. Brain, June 4, 1982). This finding of disability is not challenged here.

The Board further found that "petitioner's disability was attributable to the nature of his own personality rather than as a result of an injury or disease associated with the performance of his police duties or his position as sergeant with the Police Department." As a result of this finding, the Board concluded that petitioner should be retired under D.C.Code § 4–615 (1981), which governs retirement for disabilities not incurred in the performance of duty, rather than under D.C.Code § 4–616 (1981), which provides higher pension rates for disabilities incurred or aggravated in the performance of duty. We address petitioner's challenges to the Board's findings and conclusions in turn.

I.

Petitioner first challenges the Board's finding that his disabling psychiatric condition was not incurred in the performance of duty. This court may reject a factual finding of the Board only where it is "unsupported by substantial evidence in the record as a whole." *Neer v. District of Columbia Police and Firemen's Retirement and Relief Board,* 415 A.2d 523, 525–26 (D.C.1980); *see* D.C.Code § 1–1510(a)(3)(E) (1981). There is ample evidence—derived from petitioner's own testimony, as well as from the reports and testimony of two psychiatrists—to support a finding that "[t]here were factors at work within petitioner's personality causing his difficulties even before his promotion to sergeant and predating his appointment to the department."

Petitioner testified that he was twice disciplined while in the service for refusing to obey orders. He also testified that upon his return from Viet Nam he began experiencing nightmares. These nightmares grew worse and petitioner "became more nervous and up tight" after he was promoted to Marine sergeant and put in charge of fifty-one men. Moreover, petitioner told the Board that as a result of his increased responsibilities as a Marine sergeant, he frequently broke out in hives, experienced episodes of hyperventilation, and developed a drinking problem.

During the period between petitioner's discharge from the Marines and his promotion to sergeant with the Metropolitan Police Department, petitioner's nightmares continued. His general anxieties, however, lessened because, as he testified, "I only had to worry about myself as opposed to a group of men." Petitioner concluded his testimony by describing to the Board the ways in which his promotion by the Department to sergeant resulted in an increase in his responsibility for others and led to a renewed deterioration of his emotional and psychological well-being.

Dr. Deitz, a psychiatric member of the Board of Police and Fire Surgeons, diag-

nosed petitioner's condition as generalized anxiety disorder along with dysthymic disorder. He described these diagnostic labels as follows: "Dysthymic disorder refers to depression; ... General anxiety disorder ... refers to a person who experiences anxiety in many situations as opposed to just one situation." When asked whether he believed these disorders were caused by petitioner's on duty experiences as a police officer, Dr. Deitz responded: "No. In my opinion, they are not." Dr. Deitz instead explained the etiology of petitioner's disability in the following manner: "his work activity as a policeman reactivated or aggravated an existing condition which was set about by the combination of his personality background and his experiences in the Viet Nam war."

The report filed by Dr. Brain, who examined petitioner on four occasions between April 22 and May 19, 1982, is in agreement with this diagnosis. Dr. Brain concluded that "it is apparent that the precursors for these difficulties in part rest on Mr. Kirkwood's basic personality structure with its sense of rigidity and difficulty dealing with anger; it obviously was complicated by his experience in Viet Nam which then further has been elaborated in his current life circumstance." Dr. Brain also suggested a link between petitioner's inability to cope with his position of responsibility with the Police Department and his similar inability while in the Marines.

This evidence strongly supports the Board's finding that "petitioner's condition is 'generalized' and is not *exclusively* connected to or directly precipitated by his police duties." (Emphasis in original.) Although his duties and responsibilities as a

police sergeant may have aggravated petitioner's emotional and psychological difficulties, the etiology of petitioner's condition is rooted in experiences and events that predate his employment with the Department.

## II.

Petitioner's second argument, as we understand it, attacks the Board's conclusion that D.C.Code § 4–616 (1981) "demands a showing from the outset, that the disabling condition was first caused by the performance of the member's duty." Petitioner asserts that the relevant language in § 4–616 is ambiguous and asks this court to construe that section to encompass injuries of unknown origin where such injuries are aggravated by police duty. This proposed construction is contrary to both the plain wording and history of the statute. Consequently, we reject petitioner's argument and write only to reaffirm what we have previously suggested, that § 4–616 "precludes disability retirement benefits based on aggravating injuries unless the pre-existing condition ... was itself incurred in the performance of duty." *Perry v. Police and Firemen's Retirement and Relief Board,* 451 A.2d 88, 89 n. 3 (D.C.1982) (quoting *Hawkins v. District of Columbia,* 108 Wash.D.L.Rptr. 729, 736–37 n. 11 (April 23, 1980), aff'd sub nom. *Brown v. Jefferson,* 451 A.2d 74 (D.C.1982)).

The special disability pension rate provided by § 4–616 is available "whenever any member is injured or contracts a disease in the performance of duty or such injury or disease is aggravated by such duty at any time after appointment ... "[1] Contrary to petitioner's assertion, we do not find this

1. D.C.Code § 4–616(a) (1981) provides:

Except as provided in subsection (e) of this section, whenever any member is injured or contracts a disease in the performance of duty or such injury or disease is aggravated by such duty at any time after appointment and such injury or disease or aggravation permanently disables him for the performance of duty, he shall upon retirement for such disability, receive an annuity computed at the rate of 2½ per centum of his average

pay for each year or portion thereof of his service: Provided, that such annuity shall not exceed 70 per centum of his average pay, nor shall it be less than 66⅔ per centum of his average pay.

Petitioner, in his brief, mistakenly contends that this case is governed by § 4–616(e). Section 4–616(e), however, applies only to members of the Metropolitan Police and Fire Departments who join the departments ninety days or more after the enactment of the Dis-

language ambiguous. It simply singles out, in plain language, two types of disabilities for special treatment: first, disabilities that result directly from an injury or disease that is incurred in the performance of duty; and, second, disabilities that arise from the aggravation of "such injury or disease," *i.e.,* an injury or disease that is incurred in the performance of duty.

Accordingly, the plain wording of § 4–616(a) does not address a situation where on-the-job duties aggravate an injury or disease of unknown origin—particularly where, as here, the original injury or disease is found to predate employment with the department. Unless the Board is able to find, based on the preponderance of the evidence, that the original injury or disease is related to the performance of police or fire department duties, a disability based on duty-related aggravation does not fall within § 4–616.[2]

This reading of § 4–616(a) is further supported by the history of that section. Section 4–616(a) was amended in 1979.[3] Before this amendment, the section expressly authorized the payment of a retirement annuity to a member of the Metropolitan Police or Fire Department where "the proximate cause of injury incurred or disease contracted by a member is doubtful, or is shown to be other than the performance of duty, and such injury or disease is shown to have been aggravated by the performance of duty . . . ." D.C.Code § 4–527(2) (1973). The 1979 amendment removed this type of retirement by police officers and firefighters from the scope of this section. District of Columbia Retirement Reform Act, Pub.L. No. 96–122, § 204(a), 93 Stat. 902 (1979).[4]

Moreover, the legislative history of this amendment reveals that it was intended to "eliminate[] the aggravation clause for all employees, current and future, except for aggravation of a previous on-duty injury . . . ." S.REP. No. 237, 96th Cong., 1st Sess. 5 (1979); *see* H.R.REP. No. 155, 96th Cong., 1st Sess. 3 (1979) (This bill "[e]liminates the aggravation clause for off-duty injuries.") What Congress has deliberately written out of § 4–616, this court may not read back in. To fit within § 4–616(a) on a claim of disability arising from on-duty aggravation, the petitioner must convince the Board that his underlying injury or disease was also incurred during the performance of duty.

*Affirmed.*

trict of Columbia Retirement Reform Act of 1979. Because petitioner has been a member of the police force since 1970, the Board was correct in deciding this case under § 4–616(a), and it is that subsection that we interpret in this case. Nonetheless, we note that § 4–616(e) has language identical to that used in § 4–616(a) and quoted in the text to describe the types of disabilities to which it applies. Thus, our interpretation of § 4–616(a) inevitably will influence any reading of § 4–616(e).

2. This conclusion is buttressed by a consideration of subsection (a) within the context of § 4–616 as a whole. Section 4–616(d) provides that where an officer seeks retirement under this section "on the basis of the aggravation in the performance of duty of an injury incurred or a disease contracted in the performance of duty," he must establish that he reported the original injury or disease to the Board of Police and Fire Surgeons within a specified number of days after the time the injury was incurred or

the disease was first diagnosed. This provision, which serves as a limitation to recoveries under the aggravation clause of § 4–616(a), makes it clear that § 4–616(a) was intended to apply only where a disability results from the on-duty aggravation of an on-duty injury or disease. Such a reporting requirement would make no sense if applied to conditions, like petitioner's, which existed prior to any employment by the Police or Fire Departments.

3. At the time of the 1979 amendment, this section was codified as D.C.Code § 4–527 (1973).

4. This amendment continues to permit members of the United States Park Police force, the Executive Protective Service and the United States Secret Service to bring retirement claims for on-duty aggravation of off-duty injuries under this section. *See* District of Columbia Retirement Reform Act, *supra,* at § 204(a) (codified at D.C.Code § 4–616(b) (1981)).