**James R. DOWD, Petitioner,**

v.

**DISTRICT OF COLUMBIA POLICE AND FIREFIGHTERS' RETIREMENT AND RELIEF BOARD, Respondent.**

No. 83–238.

District of Columbia Court of Appeals.

Argued March 23, 1984.

Decided Dec. 14, 1984.

---

Charles W. Halleck, Washington, D.C., for petitioner.

Gary S. Freeman, Asst. Corp. Counsel, Washington, D.C., with whom Inez Smith Reid, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Before FERREN and TERRY, Associate Judges, and REILLY, Chief Judge, Retired.

REILLY, Chief Judge, Retired:

Petitioner, a former detective with the Metropolitan Police Department, challenges an order of the District of Columbia Police and Firefighters' Retirement and Relief Board (the Board) retiring him from service on the grounds of a disabling mental disorder not contracted in the performance of duty under the provisions of D.C. Code § 4-615(a) (1981).

Petitioner does not object to the Board's decision that his mental condition amounted to a permanent disability, but contends that the Board's findings, which led it to conclude that such disability was not due to performance of duty, are lacking in evidentiary support. Accordingly, he urges us to set aside the Board's order and to hold that petitioner was entitled to service connected disability retirement under D.C.Code § 4-616.[1] The record, however, does contain substantial evidence to support the basic findings of the Board. Therefore, we affirm.

The background of the disability proceedings may be described briefly as follows:

Petitioner, James R. Dowd, joined the police force in 1966. For almost ten years of service he exhibited no signs of mental

---

1. The act provides that the retirement annuity under this section shall not be less than 66⅔% of the average pay, as contrasted to the 40% available to petitioner provided in the section which the Board applied in his case.

instability. At one point in his career, he achieved a grade promotion and was made a detective on the robbery squad.

On February 18, 1976, he reported to the Police and Fire Clinic after an angry outburst at roll call when notified of a disappointing job performance rating.[2]

He was referred to the Psychiatric Institute, a facility specializing in mental health care, was hospitalized for about a month, and later returned to duty. Over the following two year period, 1976–78, petitioner was examined and tested by four doctors at the clinic.

In September 1981, petitioner was indicted by a grand jury in Prince George's County for assault and child abuse (stemming apparently from a domestic squabble). He was suspended without pay. At trial he successfully moved for acquittal after the state presented its case. This happened in April 1982.

Despite the outcome of the trial, petitioner was not reinstated to the payroll, as his police captain reported that petitioner had told him that he intended never to arrest any individual for a crime, even though he witnessed it, because "he would not want to subject them to the same treatment he has received in the criminal justice system." On the basis of this report, petitioner was ordered to undergo a formal evaluation of fitness for duty conducted by the psychiatric service of the Board of Police and Fire Surgeons. Dr. William Dodson, a psychiatrist, and Dr. Charles Ullman, a clinical psychologist, examined petitioner. After three individual interviews and neuropsychological testing, Dr. Dodson concluded that petitioner exhibited symptoms of a "personality structure which is poorly adaptable to periods of stress. This personality is life-long, deeply ingrained and

not in any way the result of his work as a policeman." Dr. Ullman diagnosed petitioner's disorder as a compulsive personality disorder with a basic personality structure causing acute psychotic episodes.

After a study of the foregoing, the Police Surgeon's Board issued a summary medical report. Its conclusion was that petitioner was permanently disabled by reason of an "intermittent explosive disorder" and a "compulsive personality disorder," and recommended that petitioner be presented to the Board for disability retirement.

The Board then conducted hearings on November 4, 1982 and January 13, 1983, at which petitioner was represented by counsel. In addition to the hearing transcript, the Board incorporated into the record and considered the summary medical report, the Dodson and Ullman reports, various entries made by persons on the staff of the Psychiatric Institute when petitioner was a patient in early 1976 at that facility, and a number of other documents from his personnel folder. This material was furnished to petitioner and his counsel in advance of the formal proceedings.

The only witness to take the stand at the hearings was a psychiatrist, Dr. Jeffrey Dietz of the Board of Police and Fire Surgeons, who had prepared the summary report, reflecting his analysis of the findings made by Dr. Dodson and Dr. Ullman. In his testimony he explained his reasons for concurring in the Dodson diagnosis. He conceded that until the 1976 episode petitioner had displayed no symptoms of mental illness, but said that the notice of the performance rating which occasioned petitioner's hysterical outburst was not the cause of petitioner's illness, but rather a manifestation of a preexisting condition,

---

**2.** Dr. Randolph Frank, a member of the psychiatric staff of the Board of Police and Fire Surgeons, described the episode in a report filed February 18, 1976:

> This thirty year old detective with [the] Robbery Squad with ten years of service was self-referred this date. He apparently blew up at roll call and was unable to control his

feelings. Subject [petitioner] was unable to talk for a few moments and sobbed uncontrollably. He banged his fist into his head and in general was in a state of extreme agitation and depression. He apparently feels that his career with the Police Department is over.

going back to a period of weeks, months or years.

■■■ It is well established that if an agency's findings of fact are supported by substantial evidence, we must accept such findings, even though we might have reached another result had this court been the trier of fact. *Kirkwood v. District of Columbia Police and Firemen's Retirement and Relief Board,* 468 A.2d 965 (D.C. 1983); D.C.Code § 1–1510(a)(3)(E) (1981); *see also Liberty v. District of Columbia Police and Firemen's Retirement and Relief Board,* 452 A.2d 1187, 1189 (D.C.1982). Therefore, when an agency does not exceed the authority vested in it by statute, our sole task is to examine the record and then determine whether the findings upon which its order is based do have such support. *Proulx v. District of Columbia Police and Firemen's Retirement and Relief Board,* 430 A.2d 34, 35 (D.C.1981).

Petitioner recognizes this principle, but contends that the Board's conclusion in this case lacks the requisite evidentiary support. In his argument and brief, petition-.er's counsel points out that some subsidiary findings of the Board are not supported by those pages of the transcript cited in the text. In at least two instances, petitioner's point is well taken.[3]

■■■ We do not regard these flaws in the Board's opinion, however, as seriously detracting from its overall findings, for the Board did cite Dr. Dodson's "Fitness of Duty Evaluation" and some of the other medical reports received into the record as the evidentiary basis for its decision. In our view, the text of the Board's ultimate findings constitute a fair summary couched in layman's terms of the diagnoses of the various psychiatrists upon which the Board's analysis rested.

Petitioner's thesis, however, is that Dr. Dodson's written opinion and the reports of the other psychiatrists who had examined or treated petitioner do not constitute supporting evidence, as the Board had erred in admitting these documents, and subsequently relying upon some of the observations in these papers in arriving at its findings. As neither Dodson nor the other doctors who made these reports were called as witnesses, he characterizes the key findings of the Board as resting upon uncorroborated hearsay.

This argument, however, flies in the face of a holding by the Supreme Court, where an agency finding adverse to a claim for disability benefits under the Social Security Act was sustained even though it was based on the reports of doctors who did not testify at the hearing. *Richardson v. Perales,* 402 U.S. 389, 402, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1981). According to the Court, the report of a physician who has examined a claimant and reached a diagnosis within the field of his expertise is not only admissible in administrative proceedings, but constitutes substantial evidence, notwithstanding its hearsay character, where the absence of cross-examination was due to claimant's failure to subpoena the author of the report.

■■■ In our opinion, the *Perales* holding is dispositive of the evidentiary issue raised by petitioner here. At the conclusion of the proceeding on the first day of the hearing, petitioner's counsel requested that the hearing not be reconvened until he had an

---

3. *E.g.,* (1) the observation that "… such a psychiatric disorder characteristically shielded itself during the petitioner's first few years on the police force," cites Tr. pp. 32, 35, 36, 50, 57 (November 4, 1983). There is nothing in those segments of the transcript describing the characteristics of petitioner's particular ailment. Earlier in the paragraph in which this sentence appears, the Board did, however, refer to the "findings and diagnoses of Dr. James Evans, Dr. Charles Ullman, Dr. William Dodson, and the Board of Surgeons"; (2) the opinion cites Tr. pp. 60–62 for the finding that "petitioner's condition was incurred prior to his employment…." This overstates the actual testimony of Dr. Dietz, who said that the psychiatric problem did not date from the job rating triggering petitioner's emotional outburst, but had "an insidious onset over a period of months or years." This finding is supported, however, by Dr. Dodson's report, which was properly admitted into the record.

opportunity to call on Dr. Dodson and another psychiatrist whose report was in the record, Dr. Evans. Such request was granted, the Chairman stating that the Board would issue a subpoena if counsel deemed it necessary. When the hearing was resumed some two months later, however, petitioner did not call either Dr. Dodson or Dr. Evans as witnesses. Nor did he present any other medical testimony. Thus having given up his opportunity to cross-examine the psychiatric experts whose reports had been challenged, he can scarcely be heard to say that the Board's findings rested on hearsay.

■ Petitioner also argues that where the Board is dealing with a mental disability, the government has the burden of showing that such disability was not contracted in the performance of official duty. During the hearing, Dr. Dietz conceded on cross-examination that petitioner had not exhibited any symptoms of mental illness in the first eight years he was on the police force. About two years prior to petitioner's first emotional outburst, he had hurt his head when thrown forward against the windshield in an accident which occurred while in a police cruiser. In response to a question as to whether this event might have been the cause of the mental problems which subsequently developed, Dr. Dietz replied that a "possibility that has not been totally investigated is whether or not this individual ... sustained some sort of minor neurological injury which could be associated with disorders that control his behavior."

This "possibility," however, was never supported by anything in the record. Although almost two months elapsed before the hearing was resumed, petitioner produced no medical testimony to indicate that the accident had caused him to suffer neurological damage.

Nevertheless, petitioner, citing *Blohm v. Tobriner*, 122 U.S.App.D.C. 2, 350 F.2d 785 (1965), argues that when there is evidence of a service connected injury, the "department then must offer evidence disproving the logical inference that the ensuing disability was the long term result of such injury."

In *Blohm*, the reviewing court did indeed set aside an order of the Board which found that an officer suffering recurring headaches which disabled him from performance of police duty was not incapacitated by a service connected injury. The court noted that the claimant had previously been catapulted on his head from a police motorcycle in a collision occurring in the pursuit of a speeding vehicle, incurred a severe brain concussion which necessitated his being hospitalized for six months. Hence, the court concluded that the headaches which bothered him later were service connected in the absence of evidence [to the contrary] which "should clearly preponderate and be substantial and persuasive." *Blohm, supra*, 122 U.S.App. D.C. at 3, 350 F.2d at 786.

In our opinion, *Blohm* is plainly distinguishable from the instant case on its facts. It is one thing to say that it is logical to infer that the victim of a severe skull injury will probably be bothered by headaches even after hospital treatment is completed, and quite another thing to infer that a minor injury to the forehead and neck will eventually produce bizarre emotional behavior years later if the victim of the accident feels aggrieved by such routine personnel actions as a poor performance rating or a temporary suspension of pay. This court rejected a somewhat similar contention in *Johnson v. Board of Appeals and Review*, 282 A.2d 566 (D.C. 1971).[4]

■ Finally, petitioner argues that the Board erred in not according him the high-

---

**4.** We also observed in *Johnson* that the *Blohm* decision came down before the enactment of the D.C. Administrative Procedure Act, D.C.Code §§ 1–1501, –1510 (1981), which makes the test

of evidentiary findings by an agency depend on "substantial" rather than a "preponderance" of evidence.

er retirement annuity provided by D.C. Code § 4–616(a), because it did make a finding that his relationship with the police department "did in fact exacerbate [aggravate] the disabling condition." This argument would be persuasive had not Congress amended the Retirement Act in 1979 so as to deny disability annuities at the higher rate from claims predicated on service aggravation of an off-duty injury or disease. Thus, under the current statute the cited finding of the Board was not inconsistent with its legal conclusion. *Polen v. District of Columbia Police and Firemen's Retirement and Relief Board,* 466 A.2d 464 (D.C.1983). *See also Kirkwood v. District of Columbia Police and Firemen's Retirement and Relief Board, supra,* 468 A.2d at 969.

*Affirmed.*