Woodrow P. PRICE, Petitioner,

v.

**DISTRICT OF COLUMBIA POLICE & FIREFIGHTERS RETIREMENT & RELIEF BOARD, Respondent.**

No. 86–1458.

District of Columbia Court of Appeals.

Argued March 24, 1988.

Decided June 16, 1988.

Mitchell B. Weitzman, Washington, D.C., for petitioner. Robert E. Deso, Washington, D.C., was on the brief for petitioner.

Mary L. Wilson, Asst. Corp. Counsel, with whom Frederick D. Cooke, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Before BELSON and TERRY, Associate Judges, and REILLY, Senior Judge.

REILLY, Senior Judge:

The sole question presented us by this petition for review is whether or not an order of the District of Columbia Police and Firefighters Retirement and Relief Board ("Retirement Board") that involuntarily retired petitioner from the police department because of disability under D.C.Code § 4–615 (1981)[1] was based on findings supported by substantial evidence. After examining the Retirement Board's amended decision (dated April 22, 1987), and the record, including the transcript of the hearing, we have concluded that the conclusory findings lack such evidentiary support and, therefore, reverse.

The basic facts are undisputed and may be summarized as follows:

Petitioner joined the Metropolitan Police Department in 1971, and until 1979, performed patrol duty in a scout car as an active officer attached to the Seventh District. In that year, he suffered a myocardial infarction (coronary artery disease), requiring triple bypass surgery. He was un-

able to report for work until the following year. Because of his physical condition, he was placed on "limited duty" status. This consisted of an office assignment in the crime analysis unit—a desk job—making reports to guide his superiors in deploying active officers to particular locations. He continued to do this work until his retirement hearing in October 1986. Twice during this six-year period he experienced chest pains which resulted in hospitalization. On the first occasion, in 1983, he was treated at Southeast Community Hospital and released after six days of treatment. In late fall of 1985, he was again admitted to this hospital and transferred to Georgetown University Hospital for treatment of angina and for cardiovascular tests. He was discharged by the hospital and returned to duty two weeks after admission.

The following year, an assistant police chief, Carl V. Profater, submitted a list of officers on limited duty status to the Board of Police and Fire Surgeons ("Surgeons Board") to consider whether or not the physical condition of any of these officers was such that they should be retired as disabled for useful and efficient service. Petitioner's name was on this list.

On September 22, 1986, the Surgeons Board submitted a three-page report to the Retirement Board, the relevant portion of which reads:

On September 05, [sic] 1986, a summary report from Dr. Maria Caras stated, "Mr. Woodrow Price has been my patient for the last two years. He has severe coronary artery disease, hypercholesterolemia, and hypertension. He has suffered an anteroseptal myocardial infarction in April, 1979. He has had a triple vessel coronary artery bypass graft in October 1979. In November, 1985, patient experienced chest pain consistent with unstable angina and was admitted to Georgetown University Hospital for evaluation and treatment. These records are enclosed for your review. Mr. Price was catherize

---

1. The scope of judicial review of agency action is set forth in D.C.Code § 1–1510(a)(3) (1987). *See Neer v. District of Columbia Police & Fire-*  *men's Retirement & Relief Bd.,* 415 A.2d 523, 525–26 (D.C.1980).

[sic] and found to have severe coronary lesions. He is being treated medically at present.

In view of patient's stressful occupation as a police officer and his very serious cardial disease, I recommend that the patient be retired with full disability."

Officer Price is on permanent, limited duty. *It is felt that he would not be able to return to full police duty.*

*SURGICAL SERVICE:* No surgical problems.

*PSYCHIATRIC SERVICE:* Past history of alcohol abuse; no evidence of current psychiatric problems.

*DIAGNOSES:* Coronary artery disease;
  old myocardial infarction
  Bypass graft
  Hypertension
  Hypercholesterol

This man's condition is not the result of vicious habits or intemperance.

  I. Stanley Anderson, M.D.
  Member, Board of Police
  and Fire Surgeons

The Board of Police and Fire Surgeons recommends that Officer Woodrow Price is permanently disabled with a functional impairment of 30%.

  William Chin–Lee, M.D.
  Chairman, Board of Police
  and Fire Surgeons

(Emphasis supplied.)

At the formal hearing before the Retirement Board, this report and the underlying hospital and medical records were received into evidence, having been previously served upon petitioner and his counsel. The only medical expert called to support the involuntary retirement recommendation was Dr. Anderson, who had signed the report of the Surgeons Board. Testimony was also presented by Assistant Chief Profater and petitioner.

As this proceeding is governed by section 4–615 of the Code, *supra,* the ultimate question to be decided by the Retirement Board was whether petitioner had "become disabled due to injury received or disease contracted other than in the performance of duty, which disability precludes further service with his department." In this context, the term "disabled" is a word of art, being defined in section 4–607(2) as follows:

> The terms "disabled" and "disability" mean disabled for useful and efficient service in the grade or class of position last occupied by the member by reason of disease or injury, not due to vicious habits or intemperance as determined by the Board of Police and Fire Surgeons, or willful misconduct on his part as determined by the Mayor.

The foregoing diagnoses concerning petitioner's failing health were accepted by the Retirement Board in its findings and are clearly supported by oral testimony and documentary exhibits. But as the position "last occupied" by petitioner was classified as falling in the category of "permanent limited duty," and as the opinion of the Surgeons Board, after reciting the various ailments from which petitioner suffered, was that "he would not be able to return to full police duty," *see supra,* it is apparent that the Surgeons Board's report on its face seemed to be directed at inability to perform tasks requiring physical exertion such as pursuing and arresting armed criminals, subduing riotous mobs, driving motorcycles, or directing traffic at busy intersections—tasks which all officers on "full police duty" are called upon to perform from time to time. The report left open the question of whether any of petitioner's ailments were so serious that he was precluded from further efficient service in his present desk job, a position in which he did not have to carry a gun, or do anything other than paper work in the "processing" of prisoners brought to divisional headquarters.[2]

The Retirement Board, unlike the Surgeons Board, did recognize that it was confronted with the problem of determining not whether petitioner's deteriorated physical condition disabled him from full police

---

2. At oral argument, counsel for respondent, with commendable candor, conceded that the record did not indicate that petitioner was ever assigned to handcuff prisoners or escort them to cells.

duty, but whether such condition was so serious that he was precluded from providing efficient service any longer in his current occupation. The Retirement Board made findings to this effect, stating that it was

> persuaded by the opinion of the attending physicians and Board of Police and Fire Surgeons, who all agree that [petitioner] is at substantially greater risk of suffering angina or sudden death occasioned by the exertion necessary to perform light duty work, as well as incidental activities such as driving or climbing stairs to enter the police station. . . . The Board also notes that the District may be financially responsible to a member's survivors in the event that he should die while on duty. *See* D.C.Code § 4–622(a) (1981).

On the basis of this finding, the Retirement Board concluded "that [petitioner] is disabled for useful and efficient service, pursuant to section 4–607(a)." The issue before us then is whether the record contains substantial evidence to support this crucial finding.[3] Our review of the record shows a lack of testimony to support such finding.

Granted that there was substantial evidence to show that petitioner's arteriovascular condition made him a higher than normal risk for a sudden fatal or paralyzing heart attack, the Board was inaccurate in finding unanimity of medical opinion to the effect that such risk would be substantially greater if petitioner continued in his present job. Dr. Anderson, the only physician who testified, when asked about the type of risk petitioner would run if he returned to limited duty, said he ran the risk of "recurrent pain, recurrent angina, recurrent further myocardial infarctions [and] . . . risk of sudden death." But when pressed as to whether such risks would be greater, he replied in the negative. The transcript then shows the following exchange:

Q. So, he's—he's at as much risk no matter what he does, then. Is that—
A. Well, I think he's at more risk if he goes out to play basketball, and—and—and—you know,—sports.
Q. Well, let's talk about light duty as a police officer; sedentary work. Is he at more risk or less risk then?
A. No. I don't see where that would impact, no. . . .

BY CAPT. MURPHY:

Q. The record shows, unless I'm wrong, either that—it says Officer Price is on permanent limited duty, and it was felt he would not be able to return to police duty. He—he is on permanent limited duty, and he's been on permanent limited duty, so it wouldn't make any difference if he stayed on permanent limited duty insofar as his health, then, would it?
A. Not as far as I can see, no.

On cross-examination, Dr. Anderson conceded that the Surgeons Board for which he spoke did not address itself to limited duty when it recommended disability retirement. He also said that he was unaware of any information in Dr. Caras' possession as to what work petitioner was doing when she referred to her "patient's stressful occupation as a police officer" and added that he disagreed with the "tone" of her statement.

Assistant Chief Profater, in expressing support for the retirement recommendation, testified that a man suffering from a heart disease might pose a danger to himself or a fellow officer if called upon to exert himself in an emergency situation. There is nothing in the record to indicate that such emergencies had ever arisen in the crime analysis office where petitioner worked. The witness conceded he did not know what petitioner's duties were, for he was unfamiliar with that particular office.

Testifying in his own behalf, petitioner informed the Retirement Board that ever since being assigned to light duty, with the exception of the two hospitalizations previously noted, he regularly reported to work

---

3. *See Dowd v. District of Columbia Police and Firefighters Retirement & Relief Bd.,* 485 A.2d 212, 215 (D.C.1984); *Kirkwood v. District of Columbia Police and Firemen's Retirement & Relief Bd.,* 468 A.2d 965, 967 (D.C.1983); D.C. Code § 1–1510(a)(3).

at 5:00 a.m. and remained there until his eight-hour shift was completed at 1:30 p.m. Documents from his personnel record were admitted showing that his last efficiency rating was above average and that he had received several commendations. Also admitted was a letter from his immediate supervisor highly laudatory of his contributions to the crime analysis office during this six-year period.

 In this state of the record, we see little or no evidence to support the crucial finding that petitioner's disability precluded him from performing efficient service in his last job. This finding is not bolstered by the observation that the District might incur liability to petitioner's survivors should he die while on duty. *See* D.C.Code § 4–622(a). The Board apparently overlooked another finding, *viz.*, that the disability noted was not incurred in the performance of duty,[4] because it "could find no causal relationship between [petitioner's] duties as a police officer and his disability as diagnosed." The petition for review does not contest this finding. Consequently, should petitioner be reinstated to his last position and suddenly die of a heart attack while at his desk or in his office, it would appear that in the absence of other factors indicating a different causal relationship, his survivors would have great difficulty in establishing their entitlement to benefits under this section, as it could scarcely be argued in the light of the Board's uncontested finding on causation that "the member's death was the sole and direct result of a personal injury sustained while performing such duty."

We have held that even though an injury has permanently disabled an officer from undertaking assignments requiring the degree of endurance and physical exertion incidental to full police duty, he is not entitled to claim retirement benefits if his last position was a desk job he is still capable of performing. *Jones v. District of Columbia Police & Firemen's Retirement & Relief Board,* 375 A.2d 1, 5–6

(D.C.1977). *See also Coakley v. District of Columbia Police & Firemen's Retirement & Relief Board,* 370 A.2d 1345 (D.C.1977). It necessarily follows that unless there is substantial evidence that an officer on light duty is physically or mentally incapable of continuing to do such work efficiently, an order compelling involuntary retirement cannot stand. That is precisely the kind of case we have here.

*Reversed.*

---

4. The term "performance of duty," a precondition to the exercise of survivor's rights in section 622(a), is identical to the wording of sections 615 and 616, which distinguish between service and non-service connected disabilities in determining retirement benefits.