James A. BRITTON, Jr., Petitioner,

v.

**DISTRICT OF COLUMBIA POLICE AND FIREFIGHTERS' RETIREMENT AND RELIEF BOARD, Respondent.**

No. 95–AA–66.

District of Columbia Court of Appeals.

Argued March 13, 1996.

Decided Aug. 22, 1996.

James W. Pressler, with whom Robert S. Over was on the brief, Washington, DC, for petitioner.

Phillip A. Lattimore, III, Assistant Corporation Counsel, with whom Charles F.C. Ruff, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for respondent.

Before FERREN and TERRY, Associate Judges, and KERN, Senior Judge.

TERRY, Associate Judge:

Petitioner Britton, a twenty-six-year veteran of the Metropolitan Police Department, seeks review of an order by the Police and Firefighters' Retirement and Relief Board. The Board found that his disabling hearing loss was the result of a non-work-related injury; consequently, his retirement benefits would be determined under D.C.Code § 4–615 (1994) rather than under the more generous provisions of D.C.Code § 4–616, which applies when a disability results from a work-related injury. Officer Britton claims that the government failed to meet its burden of showing that his disability is due to a non-work-related, pre-existing condition. We agree and, accordingly, remand this case to the Board for further proceedings.

I

At the hearing before the Board on his application for disability retirement, Officer Britton testified that on the evening of October 31, 1991, he was assigned to the Halloween crowd control detail in the Georgetown section of the city. At approximately 2:45 a.m. on November 1, he was standing about five feet from the tailpipe of a city-owned bus that was about to take him and other officers back to the Second District police station. When the bus driver started the engine, the exhaust system backfired with such force that several officers in the vicinity thought a bomb had exploded and drew their weapons. Officer Britton told the Board that immediately after the explosion he experienced a ringing in his right ear—the ear that was turned toward the bus.

A few hours later, Officer Britton reported to the Police and Fire Clinic complaining of pain and ringing in his ear. The clinic physician, Dr. William Chin–Lee, told Officer Britton that four other officers in the vicinity of the bus that night had also reported to the clinic with similar complaints of pain and deafness. Officer Britton was referred to Dr. Joseph C. Chapman, Jr., an otolaryngologist at Providence Hospital, for further tests on his ear. According to Britton's testimony at the hearing, Dr. Chapman told him that the backfire had caused nerve damage that "knocked out" his inner ear. In a letter to the Police and Fire Clinic dated December 2, 1991, Dr. Chapman wrote that Officer Britton's history "is suggestive of acoustic trauma...."

Under questioning from the Board, Officer Britton confirmed that a routine visit to the Police Clinic in 1978 had revealed a previously unnoticed hearing loss for high-frequency sound waves. This discovery came as a surprise to Officer Britton, who testified that up to that time he had never had any problems with his hearing. He added that the doctors at the clinic told him that this hearing loss was "not a serious condition" and that "the average policeman out on the street, through traffic noise and use of the red light siren, would suffer this high frequency loss, and it was very minor."

Following the backfire of the bus, however, the decline in Officer Burton's hearing was rapid and dramatic. His testimony before the Board was confirmed by medical evidence. A series of hearing tests administered to Officer Britton after the backfire incident showed an abrupt change for the worse in his tone recognition threshold when compared with a test dating from August 1990.

In its final order, the Board found that Officer Britton was "approximately five feet

from the rear of the bus" when it backfired, but it refused to attribute his hearing loss to this incident. The Board based its decision on "records" which, in its view, demonstrated that a *prior existing* hearing condition" (emphasis in original) was the true cause of Officer Britton's hearing loss. According to the Board, this condition had first been diagnosed on a visit to the Police Clinic on May 16, 1978. On that date, an audiological evaluation showed that Britton had "a high frequency sensory [nerval] hearing loss—cochlear pattern on the right." According to the Board, Dr. David Resnick, the specialist who examined Officer Britton after that test, "found evidence of cochlear pathology." Moreover, the Board interpreted Dr. Chapman's analysis of Officer Britton's condition in 1991 to mean that "the hearing loss is for some other reason than the backfire." The Board placed great weight on a written statement by Dr. Chapman which said that Officer Britton's history

> is suggestive of acoustic trauma, although the configuration of the hearing loss is not typical for a loss from that etiology. The findings in the middle ear demonstrated by MRI are compatible with an inflammatory process. The findings, however, do not seem to impact on the hearing since there is no significant conductive component to the hearing loss.

The Board also pointed out that Officer Britton had begun to suffer from vertigo, which "by definition ... seems unrelated to the sudden one-time loud noise of the backfire incident." Finally, the Board cited the hearing testimony of Dr. Jaime Botello that "the condition that [Britton] now suffers from is the same condition that [he] suffered from in 1978...."

In conclusion, the Board stated that "based on a preponderance of the evidence and in the absence of any medical evidence linking the hearing loss with the bus backfire incident, and considering the medical evidence supporting a hearing loss since 1978, the Board finds that member has been suffering from a hearing loss condition from at least 5–16–78, that was not related to any on-duty incident."

## II

There is no dispute that Officer Britton's hearing loss is disabling. Both sides agree that it places him and any prospective partner in danger by making it difficult to obtain important information over the radio and to hear what is going on around him. Moreover, Officer Britton now suffers from vertigo, a dysfunction that makes it difficult for him to keep his balance. At the time of the Board hearing, he had been on sick leave for almost three years.

The controversy here is about whether Officer Britton's disability is a direct consequence of the on-duty incident involving the backfire of a bus. The Board ruled that the disability was directly attributable to the hearing loss that was documented in 1978, which the Board characterized as a "prior existing hearing condition." In support of this conclusion, the Board cited a letter dated May 23, 1978, from Dr. David M. Resnick, the Director of the Hearing and Speech Center at the Washington Hospital Center, to the Police and Fire Clinic, which reported that the hearing loss he detected in Officer Britton "supports cochlear pathology." The Board also relied on the testimony of Dr. Jaime Botello of the Police and Fire Clinic, who stated that "the condition that [Officer Britton] now suffers from is the same condition that [he] suffered from in 1978."[1] Having found that Officer Britton's hearing loss dated from 1978, the Board denied him benefits under D.C.Code § 4–616 because his hearing loss "was not related to any on-duty incident."

▆▆▆ Under the District of Columbia Administrative Procedure Act, D.C.Code §§ 1–1501 *et seq.* (1992), this court's review of administrative decisions such as those by the Police Retirement Board is limited. We may not substitute our judgment for that of the Board. *Di Vincenzo v. District of Columbia Police & Firefighters Retirement & Relief Board,* 620 A.2d 868, 872 (D.C.1993). Our

---

**1.** Dr. Botello readily admitted, however, that he was not a specialist in ear disorders, and there was no evidence that Dr. Botello had ever examined Officer Britton's ears himself.

review is limited to ensuring that the Board (1) made findings of fact on each material, contested factual issue, (2) based those findings on substantial evidence, and (3) drew conclusions of law which followed rationally from the findings. *Id.*; *Allen v. District of Columbia Police & Firefighters' Retirement & Relief Board,* 528 A.2d 1225, 1229 (D.C. 1987). Before reaching a conclusion of law, the Board must "make a 'meaningful attempt to come to grips with the difficult factual issues raised'" by the parties. *Di Vincenzo, supra,* 620 A.2d at 872 (quoting *Eilers v. District of Columbia Bureau of Motor Vehicles Services,* 583 A.2d 677, 685 (D.C.1990)).

■ The police disability benefit system in the District of Columbia is structured so that a police officer "may recover disability retirement benefits under the more generous provisions of § 4–616 if the injury or illness was incurred in the line of duty and was itself disabling or disabling because it aggravated a pre-existing injury or illness which had also been job-related." *Allen, supra,* 528 A.2d at 1230; *accord, Dowd v. District of Columbia Police & Firefighters' Retirement & Relief Board,* 485 A.2d 212, 216–217 (D.C.1984); *Kirkwood v. District of Columbia Police & Firemen's Retirement & Relief Board,* 468 A.2d 965, 968–969 (D.C.1983). Benefits under section 4–616 are available when a disability results either from an injury incurred in the performance of duty or from the aggravation of such an injury. *Croskey v. District of Columbia Police & Firefighters' Retirement & Relief Board,* 596 A.2d 988, 989 (D.C.1991). Such benefits are not granted when the on-duty injury aggravates a pre-existing, non-service-related injury. *See* D.C.Code § 4–615; *Croskey, supra,* 596 A.2d at 989; *Kirkwood, supra,* 468 A.2d at 969. However, when a claimant makes a showing that he or she was injured in an on-duty incident, "the burden of proceeding shifts, and it is incumbent upon the government to adduce substantial evidence tending to disprove the inference that the disability resulted from the on-duty injury." *Croskey, supra,* 596 A.2d at 991 (citations omitted); *accord, e.g., Baumgartner v. Police & Fire-*

*men's Retirement & Relief Board,* 527 A.2d 313, 315 (D.C.1987).

■ In this case the central factual issue before the Board was whether Officer Britton's disability resulted from an on-duty injury. Britton was on duty on November 1, 1991, when a bus backfired five feet from his right ear. The tests administered to Officer Britton before and after this incident showed a substantial decline in his hearing after the backfire incident, and Dr. Chapman reported that this was "suggestive of acoustic trauma...." Dr. Chapman also told Officer Britton that the sound of the backfire had caused nerve damage that "knocked out" his inner ear. Given this evidence, we hold that Officer Britton met his burden of showing that he was injured in the line of duty. We further hold, consistently with such cases as *Croskey* and *Baumgartner,* that the burden then shifted to the government to present substantial evidence to rebut the "logical inference" that the officer's disability resulted from the on-duty injury. *Baumgartner,* 527 A.2d at 315; *accord, Croskey,* 596 A.2d at 991.

■ Thus far the government has failed to present such evidence. While the hearing test administered to Officer Britton in 1978 showed that he had suffered some hearing loss in his high tones, nowhere in the record is there an actual diagnosis of what caused *that* hearing loss. Statements that Officer Britton in 1991 suffered from the "same condition" that afflicted him in 1978 are uninformative because that "condition" had been diagnosed only by its obvious symptom: hearing loss in the high-frequency range. But "hearing loss" itself is not a diagnosis. The government presented no evidence of the etiology of the 1978 hearing loss. Without a diagnosis of the "pre-existing" condition allegedly causing Officer Britton's disability, the Board's order is unsupported by substantial evidence disproving the inference that the disability resulted from the on-duty injury in 1991.[2]

■ Moreover, even if the government could demonstrate that the 1991 hearing loss was an aggravation of the hearing loss de-

---

2. Both in its brief and at oral argument, the government has made repeated reference to the fact that Officer Britton broke his jaw during a touch football game in 1976. Although this was a severe injury, there is absolutely no evidence in the record of any causal connection between this

tected in 1978 (which on this record is still an open question), it would also have to prove by substantial evidence that the 1978 hearing loss was *not* the result of an on-duty injury. The only evidence of the cause of the 1978 hearing loss was provided by Officer Britton, who testified that the doctors had told him that "the average policeman out on the street" experienced such losses as a result of traffic noise and the use of police sirens—in other words, that a hearing loss such as that discovered in 1978 was attributable to an on-duty injury. Thus Officer Britton would still be entitled to disability benefits under D.C.Code § 4–616 because, according to the unrebutted evidence, the 1991 backfire incident aggravated a pre-existing *work-related* injury.

Summing up, we hold that Officer Britton made a sufficient showing that he was disabled in the performance of duty when the bus backfired on November 1, 1991. Consequently, the burden shifted to the government "to adduce substantial evidence tending to disprove the inference that the disability resulted from the on-duty injury." *Croskey, supra,* 596 A.2d at 991 (citations omitted). The government failed to meet that burden. Specifically, without a diagnosis of the "condition" detected in 1978 (and "hearing loss" is not a diagnosis, but only a symptom), the government cannot claim that Officer Britton suffered from a non-work-related "pre-existing condition" barring an award of benefits under D.C.Code § 4–616. Thus the Board's order, based on the government's "pre-existing condition" theory, is not supported by substantial evidence.

The order denying Officer Britton's application is reversed. This case is remanded to the Board for further proceedings consistent with this opinion.

*Reversed and remanded.*

fracture and the officer's hearing loss. Moreover, the broken jaw was never mentioned by the Board in its decision. A letter from Dr. Martin P. Kolsky to the Police and Fire Clinic, dated December 2, 1976, which describes the trauma to Officer Britton's head that accompanied the broken jaw, does not make a single reference to his ears or his hearing. Nor, for that matter, does the two-page, single-spaced narrative of the reconstructive surgery performed on the jaw by Dr. Bruce Feldman.