**Edith R. PIERCE, Petitioner,**

v.

**DISTRICT OF COLUMBIA POLICE AND FIREFIGHTERS' RETIREMENT AND RELIEF BOARD, Respondent.**

**No. 03–AA–504.**

District of Columbia Court of Appeals.

Argued Feb. 10, 2005.

Decided Sept. 1, 2005.

Frederic W. Schwartz, Jr., for petitioner.

David A. Hyden, Assistant Attorney General, with whom Robert J. Spagnoletti, Attorney General of the District of Columbia, and Edward E. Schwab, Deputy Attorney General, were on the brief, for respondent.

Before FARRELL, RUIZ and GLICKMAN, Associate Judges.

RUIZ, Associate Judge:

Petitioner, Edith R. Pierce, seeks review of a decision of the District of Columbia Police and Firefighters' Retirement and Relief Board ("the Board") concluding that she is permanently disabled but that she is not entitled to the more generous retirement benefits afforded to officers who become disabled by injuries suffered in the performance of duty because her disabling condition, a depressive disorder, was not so incurred. Petitioner does not challenge the Board's finding that she is permanently disabled, but rather contends that she established a *prima facie* case that her mental disability was incurred in the performance of duty, and that the government failed to satisfy its burden of proof to establish by substantial evidence that her

disabling condition was not caused by on-the-job duties. We hold that although one of the Board's findings is not supported by substantial evidence, its remaining substantiated findings compel the Board's conclusion that petitioner's claim fails as a matter of law, and we affirm.

## I. Factual Background

Petitioner joined the District of Columbia Metropolitan Police Department ("MPD") in 1978 at the age of 21 and rose to the rank of Lieutenant. At the time of the Board's hearing, Lt. Pierce had accumulated over twenty-four years of service with the Department. She sustained various on and off-duty injuries through her years as an officer, culminating in November 1997, when she slipped and struck the back of her head and neck against the frame of a police cruiser while entering the vehicle. She was treated at the Police & Fire Clinic for her injuries and returned to full duty in February 1998. The following year, in January 1999, Lt. Pierce reported to the Clinic complaining of "pain and swelling" in the back of her head, neck, shoulders and back, attributing her symptoms to an aggravation of the November 1997 injury. She also complained of "stress, insomnia, headaches, increased appetite and depression," and submitted an extensive injury report linking the cause of her mental condition to a "hostile work environment, humiliation by subordinates and peers," and accusing her supervisor, Commander Winston Robinson, of continuous "belittlement and harassment." Based on her reports, she was diagnosed as being severely depressed and placed on sick leave for a duty-related illness. Dr. C. Richard Filson, the treating psychologist at the clinic, diagnosed the petitioner as having Major Depressive Disorder, Severe Single Episode, and her police powers were revoked on March 3, 1999. In April of that year, petitioner returned to light duty, only to develop psychotic symptoms (specifically, frank paranoid ideation, accompanying suspiciousness, irritability and misperceptions of environmental occurrences) in the following month. She last worked as an officer in September of 1999. Although it appears that her illness was then classified as not incurred in the performance of duty ("non-POD"), the following month, Ira Stohlman, the Director of MPD's Medical Services Division ("MDEAP"), reconsidered that determination and reclassified petitioner's illness as having been incurred in the performance of duty ("POD").

Dr. Filson prepared a report in September 2001, recommending that petitioner be retired from the police force due to her diagnosis, concluding: "Lt. Edith Pierce is permanently disabled. According to AMA Guides, Fourth Edition, she falls into a Class (4) rating (Marked Impairment) which translates into an approximately 75% impairment." The report related the history of petitioner's mental illness, noting that the "crisis," as described in Dr. Filson's report, had its genesis in "several years of harassment and discrimination against her. She also alleges that she suffered insubordination from those officers which were under her command and that this was never addressed due to this same pattern of ongoing harassment." Dr. Filson's report noted that "[a]s the documents reveal, her condition was originally ruled non-POD and that decision was subsequently reversed upon further investigation. She has been continuously treated as a POD related behavioral health case ever since that time." Ira Stohlman added a notation at the end of Dr. Filson's retirement recommendation, stating that "the above member's condition, which permanently prevents the performance of full duties, occurred during the performance of duty." Dr. Oliveria, of the Police & Fire

Clinic, who also treated Lt. Pierce for over two years from 1999—2001, submitted a supplementary retirement report in which she concurred with Dr. Filson's diagnosis of Lt. Pierce's condition and permanent disability.[1]

Lt. Pierce formally requested disability retirement in November of 2001. At the hearing before the Board only Dr. Filson and the petitioner testified. Dr. Filson reported that Lt. Pierce was diagnosed with Major Depressive Disorder, Severe with Psychotic Features, and had a seventy-five percent disability rating. The questioning of Dr. Filson centered on whether the illness occurred in the petitioner's performance of duty. Dr. Filson reported that petitioner's disability "was ruled by MPD as POD ... [and] I have no evidence that would suggest it's otherwise." Dr. Filson emphasized that he was testifying as a doctor and informed the Board that "I do not, nor does any doctor at the hospital, or at the clinic ... make the decision what is POD and what is not POD." He further testified that "most people who would get this ill would have some prior history of not functioning as well as she did," yet, he noted, the petitioner had been a high-functioning police officer before her illness. Additionally, Dr. Filson made it clear to the Board that, although an underlying condition was "possible," there was "no evidence" to suggest that the petitioner suffered from a preexisting mental disorder. Nevertheless, Dr. Filson informed the Board that he had no objective evidence to link the petitioner's illness to her performance of duties. He could "only tie [petitioner's disability] to the things that she tells me.... I do not independently know of any of these events,

whether they occurred or they didn't occur. I only know what the patient tells me ...."

In her testimony, petitioner recounted a number of incidents of harassment on the job. She stated that she had filed a number of complaints with the MPD, and that she also had filed a claim involving an alleged denial of a promotion with the EEOC, which she ultimately settled with the police department. She did not, however, give any details as to the nature of the complaint, or the terms of her settlement with the MPD.[2] There is no other evidence in the record concerning the settlement of the claim filed with the EEOC. Relying on petitioner's personnel record, the government argued that although petitioner had filed various employment complaints during her career at MPD alleging harassment, discrimination, insubordination, perceived insults, and career stagnation, none of these claims had been sustained after investigation.

A unanimous Board found by a preponderance of the evidence that Lt. Pierce "suffers from Major Depressive Disorder, Severe with Psychotic Features" and is "incapacitated from further duty within the Department by reason of disability." The Board also determined that because her "disabling condition was not incurred in the performance of duty," petitioner was not entitled to receive the more generous benefits provided pursuant to D.C.Code § 5–710(a) (2001). The Board, citing *Jocklyn M. Davis and United States Postal Service,* 2002 ECAB Lexis 1720 (Employees Comp. App. Bd. Aug. 20, 2002), expressed the view that a claimant's own perception of harassment in the workplace is not presumed compensable as work-re-

1. Though Dr. Oliveira's report notes Lt. Pierce's reports of harassment, it is silent as to the cause of petitioner's disability or its POD status.

2. According to petitioner's testimony, the settlement was confidential.

lated unless the alleged incidents were supported by objective evidence and were unreasonable. In determining whether such a showing had been made here, the Board found significant the absence of objective evidence that substantiated any of petitioner's numerous employment complaints, and highlighted various complaints in her personnel file which were investigated and found to be "not sustained." The Board noted that Dr. Filson's testimony as to whether petitioner's illness was incurred in the performance of duty was based exclusively on the Department's prior POD determination and the history he had obtained from Lt. Pierce, and thus did not furnish independent evidentiary support which would confirm her allegations. The Board also noted that the evidence regarding a preexisting illness was in conflict, pointing to Dr. Filson's testimony that although there was no evidence to suggest the petitioner suffered from a mental disorder prior to her present illness, there was a possibility that the petitioner had an underlying condition which could have surfaced regardless of her employment.

In conclusion, the Board articulated three factors for its determination: (1) petitioner's complaints of harassment and discrimination have not been substantiated or sustained, (2) the testimonial evidence regarding an employment-related basis for petitioner's illness is based solely on these unsubstantiated complaints, and (3) the conflicting evidence regarding a preexisting illness.

## II. Legal Discussion

The police disability benefit system is structured to provide a higher pension rate for those officers who retire as a result of disabilities incurred during their service. If a "member is injured or contracts a disease in the performance of duty or such injury or disease is aggravated by such duty," upon retirement for this disability, the officer will receive an annuity computed at the "rate of 2½% percent of his [or her] average pay for each year or portion thereof of his [or her] service," which shall not be less than two-thirds of the officer's average yearly salary. D.C.Code § 5–710(a). However, if a disability is the result of an "injury received or disease contracted other than in the performance of duty," the officer is entitled to a smaller pension, computed at the rate of two percent of the average salary for each year of service, but not less than forty percent of the officer's average yearly salary. *See* D.C.Code § 5–709(a). The Board's determination of whether an officer's injury was incurred while in the performance of duty is therefore of key importance, as it determines whether the officer is entitled to a more generous retirement benefit.

Petitioner challenges the Board's finding that her disability was not incurred in the performance of duty, thus denying her the higher pension rate afforded under § 5–710(a). This court has articulated a burden-shifting framework to guide the Board's determination in resolving the factual issue of whether a claimant's injury has been incurred during the performance of duty. A claimant seeking benefits under § 5–710(a) has the "initial burden of producing evidence that the disabling injury was incurred in the performance of duty." *Baumgartner v. Police & Firemen's Ret. & Relief Bd.,* 527 A.2d 313, 315 (D.C.1987); *Lamphier v. District of Columbia Police & Firefighters' Ret. & Relief Bd.,* 698 A.2d 1027, 1032 (D.C.1997). Under this burden-shifting scheme, "when a claimant makes a showing that he or she was injured in an on-duty incident, 'the burden of proceeding shifts, and it is incumbent upon the government to adduce substantial evidence tending to disprove the inference that the disability resulted from the on-duty injury.'" *Britton v. Dis-*

trict of Columbia Police & Firefighters' Ret. & Relief Bd., 681 A.2d 1152, 1155 (D.C.1996) (quoting Croskey v. District of Columbia Police & Firefighters' Ret. & Relief Bd., 596 A.2d 988, 991 (D.C.1991)); Batty v. District of Columbia Police & Firefighter's Ret. & Relief Bd., 537 A.2d 204, 205 (D.C.1988); Baumgartner, 527 A.2d at 315. If the government fails to produce adequate proof to effectively rebut claimant's prima facie case, the claimant is "entitled ... to rely on the 'logical inference' that his or her disability was the result of the proven on-duty injury." Id.; Lamphier, 698 A.2d at 1032. Although the burden of proof shifts between the parties, "the ultimate burden of persuasion remains with the person claiming entitlement to a special pension rate." Id. at 1032 (quoting Croskey, 596 A.2d at 991–92 (internal brackets omitted)); Beckman v. District of Columbia Police & Firefighters' Ret. & Relief Bd., 810 A.2d 377, 385 (D.C. 2002); Long v. District of Columbia Police & Firefighters' Ret. & Relief Bd., 728 A.2d 112, 114 (D.C.1999).

 This court's review of the Board's decision is narrowly confined to ensuring that the Board "(1) made findings of fact on each material, contested factual issue, (2) based those findings on substantial evidence, and (3) drew conclusions of law which followed rationally from the findings." Britton, 681 A.2d at 1155 (citations omitted); Allen v. District of Columbia Police & Firefighters' Ret. & Relief Bd., 528 A.2d 1225, 1229 (D.C.1987). The court defers to the Board's reasonable interpretation of the law it is charged with implementing, see, e.g., Fort Chaplin Park Assocs. v. District of Columbia Rental Hous. Comm'n, 649 A.2d 1076, 1080 (D.C. 1994) ("This court will defer to an agency's interpretation of a statute which the agency administers provided that the agency's interpretation is reasonable."), and must

accept its findings if, upon review of the entire record, they are supported by substantial evidence. Baumgartner, 527 A.2d at 316; Szewczyk v. District of Columbia Police & Firefighters' Ret. & Relief Bd., 633 A.2d 1, 1 (D.C.1993); Long, 728 A.2d at 114. Substantial evidence is "more than a mere scintilla"; it is evidence that a "reasonable mind might accept as adequate to support a conclusion." Id. (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (citations and internal quotation marks omitted)); Batty, 537 A.2d at 205. If we conclude that there was substantial evidence to support the Board's findings, "we may not substitute our judgment for the Board's 'even though there may also be substantial evidence in the record to support a contrary finding.'" Szewczyk, 633 A.2d at 1–2 (quoting Baumgartner, 527 A.2d at 315); accord Dowd v. District of Columbia Police & Firefighters' Ret. & Relief Bd., 485 A.2d 212, 215 (D.C.1984).

*Petitioner's Prima Facie Case*

Petitioner argues that she satisfied her initial burden to make a prima facie showing that her mental disability was incurred in the performance of duty, that the government did not present substantial evidence in the record to rebut the inference created by her prima facie case, and that the Board's conclusion that the etiology of her disability was a non-work-related injury is therefore in error. The government responds that petitioner failed to establish a prima facie case that her illness was incurred in the performance of duty, and thus, there was no inference that caused the burden of production to shift to the government to disprove that the disability was caused by a work-related injury.

 In its analysis the Board did not expressly apply the burden-shifting scheme for determining whether petitioner

had presented evidence that created an inference that her disability resulted from an injury incurred in the performance of duty. Instead, it reviewed the evidence of record as a whole in reaching a conclusion that the disability was not incurred in the performance of duty. The burden-shifting scheme we have established reflects the policy embraced in the statute that police officers and firefighters who are disabled due to injuries suffered while in service of the public good should be afforded more generous retirement provisions—unless and until it can be proven that the disability is not related to an injury suffered in the performance of their public duties. The evidentiary burden to prove a *prima facie* case is not onerous, *cf. Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); there merely needs to be a sufficient basis to permit a reasonable inference that the disabling injury was incurred in the performance of duty.

■ On this record, petitioner amply met her initial burden of making a *prima facie* showing that her mental illness was related to an on-duty causative event, as her testimony, MPD and doctor's reports and expert testimony all support this finding. To summarize, Dr. Filson's retirement report linked the petitioner's mental disability to her complaints of harassment and insubordination by co-workers, and indicated that her condition had been ruled POD by MPD. Petitioner testified about the harassment she experienced, and record evidence of her complaints corroborated her claims. A memorandum from the Director of MDEAP, found a "reasonable basis" for the classification of petitioner's injury as having been incurred in the performance of duty. Additionally, a supplemental retirement report by Dr. Filson noted that the petitioner had no previous psychiatric treatment with medication pri-

or to her illness, and had performed well on the job as commander of two hundred officers until the disability rendered her incapable of fulfilling her duties as a lieutenant.

Moreover, at the hearing Dr. Filson testified that petitioner's illness had developed as a result of problems she experienced with on-the-job harassment and disparate treatment. Dr. Filson opined to a "reasonable scientific certainty" that there was no evidence of a preexisting condition. He reiterated the opinion in his supplemental retirement report that petitioner's high level of functioning as a lieutenant prior to the onset of her mental condition corroborated that the illness was precipitated by on-the-job stresses because a person with an underlying mental disorder would not have a history of functioning so well. Based on his knowledge of petitioner's case, Dr. Filson concluded that in his expert opinion Lt. Pierce's mental disability is "directly related" to the "events" of harassment and discrimination that she noted. Based on the evidence presented, Pierce met her burden of making a *prima facie* showing that her disabling illness was incurred in the performance of duty.

### The Government's Rebuttal

■ As petitioner made a *prima facie* showing that she had been injured in the performance of duty, the question turns to whether the District met its burden to produce "substantial evidence tending to disprove the inference that the disability resulted from the on-duty injury." *Britton,* 681 A.2d at 1155 (quoting *Croskey,* 596 A.2d at 991). In applying similar burden-shifting schemes, *see, e.g., McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), when the claimant makes a *prima facie* showing, the burden placed on the defending party is only one of production.

See *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089. Once the two parties have made their predicate showings, the ultimate issue becomes one of fact for the fact finder, *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–47, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), just as it is under the burden-shifting scheme for one seeking retirement benefits under D.C.Code § 5–710(a), where "the ultimate burden of persuasion remains with the person claiming entitlement to a special pension rate." *Lamphier*, 698 A.2d at 1032 (quoting *Croskey*, 596 A.2d at 991–92 (internal brackets omitted)); *Beckman*, 810 A.2d at 385; *Long*, 728 A.2d at 114.

We find that the District met its burden of production by submitting substantial evidence which undermined the petitioner's *prima facie* case, allowing the Board to make a factual determination—after taking all the evidence into account—that petitioner had not made a persuasive showing that her disability was incurred in the performance of duty.

To rebut petitioner's case, the government relied on petitioner's personnel file. The file contained a number of documents which called into question whether petitioner's allegations of harassment, insubordination, and discrimination had actually occurred. For example, the Board emphasized memoranda in Lt. Pierce's personnel file regarding various complaints of harassment which were never substantiated. In one, a memorandum dated April 8, 1998, which concerned three allegations of harassment by the same supervisor, Commander Robinson of the Seventh District, it was reported that all claims were investigated and classified as "not sustained" or "unfounded." In another memorandum, dated July 16, 1998, regarding an informal grievance of insubordination, Alfred Broadbent, Sr., Assistant Chief, Office of the Chief of Police, Patrol Services Bureau, determined petitioner's claim to be "not sustained." Petitioner has not challenged MPD's internal investigations of her complaints, and there is no facial deficiency in the reports. *Cf. Fontenot v. District of Columbia Dep't of Employment Servs.*, 804 A.2d 1104, 1107 (D.C.2002) (concluding that hearing examiner's finding that claimed symptoms predated on-the-job injury was not supported by substantial evidence because hearing examiner relied on patently weak evidence in a medical form to overcome presumption of compensability). By offering substantial evidence that rebutted the factual premise for petitioner's expert testimony, the District shifted the burden back to Lt. Pierce to ultimately persuade the Board that her disability was attributable to an injury suffered in the performance of duty. *See Atkins v. Goord*, 16 A.D.3d 1011, 792 N.Y.S.2d 669, 670–71 (N.Y.App.Div.2005) (affirming denial of inmate's grievance on the basis that correctional authorities investigated and dismissed inmate's claims of abuse because agency's determination "was not arbitrary, capricious or affected by error of law").

*The Board's Order*

■ Based on the documentary record—which did not reveal a single substantiated instance of harassment—the Board reasoned that Dr. Filson's expert opinion that petitioner's condition is "directly related to the accumulation of events that she describes in her multiple pages in her history" was undermined by the lack of objective evidence in the record that any of petitioner's allegations of harassment occurred, and thus rejected the factual basis for that opinion.[3]

3. Dr. Filson was clear that there was no test he could perform to identify the actual etiology of Lt. Pierce's disability; that his attribution of the disability to workplace harassment was only as good as his source for the information, Lt. Pierce. As the Board related in

■ This court has enunciated that when a case concerns a claimant's mental disability, "[d]etermining the root cause of a psychological condition and ruling out other possible causes are questions better elucidated by expert opinion." *Beckman*, 810 A.2d at 386 (finding error in the Board's rejection of undisputed expert opinions and substitution of its own opinion as to the cause of the member's mental illness). Testimony and reports by doctors who have examined and diagnosed the claimant "constitute substantial evidence for consideration by the Board." *Id.* at 387 (citing *Croskey*, 596 A.2d at 991 n. 4). Thus, "the Board must make a careful analysis," and provide a "reasoned basis supported by substantial evidence" for rejecting the expert opinion rendered as to causation. *Id.*; *see Croskey*, 596 A.2d at 990; *see also White v. District of Columbia Dep't of Employment Servs.*, 793 A.2d 1255, 1258 (D.C.2002). As the Board had a "reasoned basis" for rejecting the expert opinion rendered as to causation, *Beckman*, 810 A.2d at 387, we are compelled to accept its determination.

The Board's conclusion that petitioner's disability was not incurred in the performance of duty was based on two factual determinations which necessarily rejected petitioner's assertions of harassment: (1) that Pierce's employment complaints of harassment and discrimination have not been substantiated or sustained, and (2) that Dr. Filson's testimonial evidence regarding the POD status of the injury was based solely on Pierce's complaints. These findings are supported by evidence in the record that a "reasonable mind might accept as adequate" for making such a determination, and we therefore must uphold the Board's conclusion. *See Croskey*, 596 A.2d at 990.

The Board's reasoning looked to Federal worker's compensation case law, which holds that to make out a valid claim for psychological trauma because of on the job harassment, the claimant must prove that the instances of harassment occurred and that they are beyond the pale of normal workplace disputes. *See* Board Report at 8; *Jocklyn M. Davis*, 2002 ECAB Lexis 1720, at *9–10 ("As a general rule, an employee's emotional reaction to administrative actions or personnel matters taken by the employing establishment is not covered .... [C]overage under the Act would attach if the factual circumstances surrounding the administrative or personnel action established error or abuse by the employing establishment superiors in dealing with the claimant."). This standard is in accord with decisions of this court in the worker's compensation arena, *see McEvily v. District of Columbia Dep't of Employment Servs.*, 500 A.2d 1022, 1023 (D.C. 1985) (affirming the denial of worker's compensation benefits where the claimant alleged employment harassment and the testifying expert "could not find any incident, experience, or ongoing occurrence that represented a significant stressor that would have affected anyone who was not so predisposed"), as well as commentators, *see generally* 3 ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 56.06[1] (2005), and other jurisdictions that have addressed the issue. *See, e.g., School District No. 1 v. Dep't of Indus., Labor & Human Relations*, 62 Wis.2d 370, 215 N.W.2d 373, 377–78 (1974) ("[M]ental injury nontraumatically caused must have resulted from a situation of

its Order, Dr. Filson stated that he could only link the cause of petitioner's illness "to the things that she tells me," and that he did not "independently know of any of these events, whether they occurred or didn't occur." He stated: "I only know what the patient tells me in my history taking."

greater dimensions than the day-to-day emotional strain and tension which all employees must experience."); *accord Townsend v. Maine Bureau of Pub. Safety*, 404 A.2d 1014, 1019 (Me.1979); *Philadelphia Newspapers, Inc. v. Workmen's Comp. Appeal Bd.*, 544 Pa. 203, 675 A.2d 1213, 1219 (1996) ("A claimant may recover worker's compensation benefits for psychic injuries caused by actual employment events only when the claimant proves the events to be abnormal."). The Board's requirement of proof of actual on-the-job harassment is a reasonable requirement of law, to which we defer. *See Fort Chaplin Park Assocs.*, 649 A.2d at 1080.

The *Davis* decision, as well as the others cited above, deal exclusively with the "normal" tensions which may arise in the workplace—disagreements with supervisors and co-workers, and the like. For the most part, petitioner's claims fall within this sphere, as they allege that she was "disrespected" by a commander, insulted in foul language and told "to shut-up" by co-workers, and denied promotions. Petitioner also alleged in her testimony that she was inappropriately touched by a male supervisor, while another male supervisor would ask her to kiss him. Unlike the usual stressors that are considered part and parcel of the workplace, sexual harassment is not to be tolerated in any workplace and, if the allegations are shown to be true, they could be a basis for recovery. We note, however, that petitioner candidly admitted that she never reported these acts of alleged sexual harassment because she was afraid she would be "blacklisted" within the department if she filed a complaint. Without evidence to support her testimony, the Board had a reasoned basis for believing that these acts similarly had never occurred in light of petitioner's history of filing grievances found to be unsubstantiated.

■ We do find a significant flaw in the Board's finding that petitioner's illness did not result from the performance of her duties, because there was, in the Board's view, "conflicting evidence regarding a pre-existing illness." The Board's interpretation of Dr. Filson's testimony regarding the etiology of petitioner's depression as "conflicting" is not supported by the evidence presented at the hearing. In its Conclusions of Law, the Board correctly stated that Dr. Filson testified "with reasonable scientific certainty that there was no evidence of a pre-existing condition." However, the Board then selectively emphasized his testimony by quoting only that part of Dr. Filson's testimony where he stated in cross-examination that it was "possible" for petitioner to have a pre-existing illness which caused her mental disorder to ripen, while ignoring his averment that this was highly unlikely.[4] The Board also disregarded Dr. Filson's explanation that any finding of a pre-existing condition would be a "pure assumption." In other words, Dr. Filson testified that although he could not be absolutely certain, he was of the opinion to a reasonable degree of medical certainty, that petitioner did not have a pre-existing condition. His expert opinion was supported by Lt. Pierce's high level of functioning on the job before she began to have symptoms of her illness. The government did not present any evidence to suggest that petitioner had an underlying mental condition prior to her diagnosis. Therefore, the Board's

---

4. Question: "[I]s it possible that she had a pre-existing condition, which, over a period of time, became more severe, and would have, no matter what career she had chosen? Is this possible?"

Dr. Filson: "It's possible."
Question: "Possible, doctor, but no evidence of it?"
Dr. Filson: "Correct."

characterization of Dr. Filson's testimony as providing "conflicting evidence" concerning a pre-existing condition is without substantial support in the record.

Ordinarily, an error of this nature would mandate reversal, as "[a]n administrative order can only be sustained on the grounds relied on by the agency." *Jones v. District of Columbia Dep't of Employment Servs.*, 519 A.2d 704, 709 (D.C.1987); *SEC v. Chenery Corp.*, 318 U.S. 80, 87–88, 63 S.Ct. 454, 87 L.Ed. 626 (1943); *cf. Kralick v. District of Columbia Dep't of Employment Servs.*, 842 A.2d 705, 713 (D.C.2004) (reversing decision of the Director of the Department of Employment Services where his basis for rejecting the opinion of a treating physician lacked substantial evidence in the record). In this case, however, the Board's error was without legal consequence because the Board concluded—and substantial evidence in the record supports—that petitioner failed to carry her legal burden. The Board adopted a legal standard that imposed on petitioner the burden to prove with objective evidence that the events she claimed caused her mental illness—*i.e.*, on the job abuse or harassment—had actually occurred. As the Board found, however, none of petitioner's grievances had been substantiated. Thus, regardless of its misapprehension of Dr. Filson's testimony concerning a pre-existing illness, the Board's conclusion was ordained by its subsidiary finding that the allegations of harassment were not supported by any evidence other than petitioner's testimony. Under the reasonable legal standard adopted by the Board, to which we defer, the evidence of record was insufficient as a matter of law to sustain petitioner's claim.

*Affirmed.*