*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-AA-597

NICOLE R. MCCREA, PETITIONER,

v.

DISTRICT OF COLUMBIA POLICE AND
FIREFIGHTERS' RETIREMENT AND RELIEF BOARD, RESPONDENT.

Petition for Review of an Order of the
District of Columbia Police and
Firefighters' Retirement and Relief Board
(FD-2038-14)

(Submitted September 28, 2017                    Decided January 3, 2019)

*Nicole R. McCrea*, *pro se*.

*Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General at the time the brief was filed, *Loren L. AliKhan*, Deputy Solicitor General at the time the brief was filed, and *James C. McKay, Jr.*, Senior Assistant Attorney General, were on the brief, for respondent.

Before BLACKBURNE-RIGSBY, *Chief Judge*, MCLEESE, *Associate Judge*, and NEBEKER, *Senior Judge*.

Opinion for the court by *Chief Judge* BLACKBURNE-RIGSBY.

Dissenting opinion by *Senior Judge* NEBEKER, at page 18.

BLACKBURNE-RIGSBY, *Chief Judge*: *Pro se* petitioner Nicole R. McCrea, a

fifteen-year veteran of the District of Columbia Fire and Emergency Medical

Services Department ("Department"), was involuntarily retired on April 30, 2015, by respondent District of Columbia Police and Firefighters' Retirement and Relief Board ("Board") upon its determination that she was mentally disabled and incapacitated due to a diagnosis of Adjustment Disorder with Anxiety and Depression ("ADAD"). The Board concluded that her disability was not incurred in the "performance of duty" ("POD") and was therefore compensable under the provision of the statute governing retirement disability for injuries not incurred in the POD, instead of the provision for disabilities incurred during the POD, which provides benefits at a higher annuity rate.

Ms. McCrea challenges her involuntary retirement on the grounds that the Board's conclusion "lacks competent, objective, probative and reliable evidence." In the alternative, she seeks a reversal of the Board's determination that her disability was not incurred in the POD, claiming that she is entitled to receive retirement benefits at the POD annuity rate. Ms. McCrea claims that her ADAD condition stems from a sexual assault by her co-workers while she was on duty, which she contends constitutes a disability incurred in the POD.

We affirm and conclude that substantial evidence in the record supports the Board's decision to involuntarily retire Ms. McCrea for a disability not incurred in

the POD. The alleged incident of sexual assault on Ms. McCrea cannot form the basis of relief pursuant to D.C. Code § 5-710 (a) (2012 Repl.), which dictates relief for a disability incurred in the POD. Our conclusion is controlled by our decisions in *In re Underwood v. National Credit Union Administration*, 665 A.2d 621 (D.C. 1995), and *Nunnally v. District of Columbia Police & Firefighters' Retirement & Relief Board*, 184 A.3d 855 (D.C. 2018), wherein we held that mental and emotional injuries resulting from sexual harassment in the workplace could not be classified as "injuries" arising out of employment, since sexual harassment does not concern any task the employee was called upon to perform. *Underwood, supra*, 665 A.2d at 632-33. We hold that, likewise, mental and emotional injuries resulting from sexual assault in the workplace are not compensable as injuries incurred in the POD.

## I. Factual and Procedural Background

Ms. McCrea began working as a firefighter with the Department on January 3, 2000. Her claim arose from an incident that she contends occurred at around midnight on the evening of May 30, 2013. She asserts that she was sleeping on her stomach at the firehouse, when three male co-workers "fondl[ed] [her] between [her] legs." Following the May 30th incident, Ms. McCrea contends that she

experienced "difficulty concentrating, difficulty falling asleep and/or staying asleep, headaches, loss of appetite, nausea, upset stomach and diarrhea." On June 25, 2013, Ms. McCrea reported the incident to the District of Columbia Police and Fire Clinic ("Clinic") and requested that her ensuing mental health injury be classified as a POD injury. After filling out the Clinic's incident report, Ms. McCrea was referred to the Clinic's Behavioral Health Services section where she was interviewed by a psychologist, Mary Kenel, Ph.D., who evaluated her and placed her on sick leave on June 25, 2013. Ms. McCrea remained on sick leave until the Board made its decision to retire her on April 30, 2015, which became effective on May 15, 2015.

In March 2014, the Clinic referred Ms. McCrea to clinical psychologist and neuropsychologist, Dr. Gloria Morote, who specializes in psychological evaluations. Dr. Morote recommended Ms. McCrea for disability retirement. D.C. Code § 5-633 (2012 Repl.) mandates that uniformed employees who have been on leave for a significant period of time due to injury or illness be recommended for disability retirement. Dr. Morote based her recommendation on the fact that Ms. McCrea had been on sick leave for an extended period of time and her diagnosis of an anxiety disorder, which affected her "ability to . . . express her feelings, work under stress, make judgments, and deal with people in general," and prevented her

from performing her duties as a firefighter. The Board subsequently held a three-day retirement hearing on November 6, 2014, and January 22 and February 12, 2015.

At the hearing, Ms. McCrea appeared *pro se* and testified that she did not wish to be retired. She urged the Board to adopt the conclusions of her treating psychologist, Dr. Beverli Mormile, that Ms. McCrea suffered from Post-Traumatic Stress Disorder ("PTSD"), was fit to return to work on a limited-duty status, and should be reinstated. The Board determined that Ms. McCrea suffered from an ADAD, "which prevents her from performing useful and efficient service with her Department," and did not find the record evidence sufficient to support the finding that she suffered from PTSD. The Board subsequently retired Ms. McCrea "by reason of a disability not incurred in the performance of duty." The Board based its decision on Ms. McCrea's demeanor during the three days of hearings, where she was "visibly and extremely mistrustful and paranoid;" her refusal to comply with the Clinic's requests for treatment information from her treating psychologist; her failure to submit any documentation, including diagnostic test results or clinical notes that would support Dr. Mormile's diagnosis and treatment recommendations; and the record evidence as a whole. The Board weighed this evidence against the Department's evidence, which included testimony, reports,

standardized tests, and the diagnosis of the Clinic's psychologist, Dr. Morote, and found that the Board's interaction with Ms. McCrea "strongly supports Dr. Morote's opinion that [Ms. McCrea]'s paranoia and distrust is so pervasive that it would prevent [her] from performing the full duties of a firefighter because she could no longer work effectively with a team." Further, the Board concluded, Ms. McCrea's inability to work as a team, which is central to the functions of a firefighter, is evidence that she is unable to perform the functions of a firefighter safely in life-or-death situations and she poses a risk to herself and to the public.

The Board was unable to assign Dr. Mormile's conclusion and recommendation much weight because Dr. Mormile did not submit any corroborative evidence like testing reports or clinical notes. Further, Dr. Mormile's recommendation was contradictory as she stated that Ms. McCrea could return to full duty and then listed "a number of limitations which prevented less-than-full duty status."

## II. Analysis

To be considered a member of the Department performing the member's "full range of duties," the member must have the "ability" "to perform *all of the*

*essential functions* of police work or *fire suppression as determined by the established policies* and procedures of the Metropolitan Police Department or the Fire and Emergency Medical Services Department." D.C. Code § 5-701 (19) (2012 Repl.) (emphasis added). According to the District of Columbia Fire and Emergency Medical Service Useful and Efficient Service Statement, to be considered a full duty uniformed member, a firefighter must be able to perform an extensive list of "essential duty functions." "While not exclusive," the list includes:

> Perform firefighting tasks . . . , rescue operations, and other emergency response actions under stressful conditions . . . for prolonged time periods . . . .
>
> Perform in unpredictable emergency requirements for prolonged periods . . . .
>
> Critical, time-sensitive, complex problem solving during physical exertion in stressful, hazardous environments . . . .
>
> *Ability to communicate* (*give and comprehend verbal orders*) . . . .
>
> *Functioning as an integral component of a team*, where sudden incapacitation of a member can result in mission failure or in risk of injury or death to civilians or other team members.

(emphasis added).

**A. Substantial evidence supports the Board's determination that Ms. McCrea is disabled from useful and efficient service as a firefighter.**

Under the Police and Firefighters' Retirement and Disability Act ("PFRDA"), D.C. Code §§ 5-701 to -724 (2017 Supp.), "[t]he terms 'disabled' and 'disability' mean disabled for useful and efficient service in the grade or class of position last occupied by the member by reason of disease or injury, not due to . . . willful misconduct on his part."  § 5-701 (2).

In its analysis, the Board made the following findings.  Dr. Morote opined that Ms. McCrea suffers from ADAD, which makes her paranoid and mistrustful; as a result, her symptoms are so pervasive that they would prevent her "from performing the full duties of a firefighter because she could no longer work effectively with a team" and "follow orders."  In accepting Dr. Morote's opinion, the Board opined that this point is evidenced by Ms. McCrea's inability to meet the "essential duty functions" of a firefighter—namely, to "communicate (give and comprehend verbal orders)" with her co-workers and working "as an integral component of a team, where sudden incapacitation of a member can result in mission failure or in risk of injury or death to civilians or other team members." The Board credited Dr. Morote's opinion and concluded that a member who is

unable to complete the "essential duty functions" of her job is not a member performing her "full range of duties" pursuant to the PFRDA, § 5-701 (19), and is considered "disabled for useful and efficient service" in that member's capacity. § 5-701 (2).

Dr. Mormile did not testify but the Board relied on three of Dr. Mormile's treatment updates. In August 2014, Dr. Mormile noted that "Ms. McCrea continues to experience severe psychological symptoms that impede her ability to complete many of her job duties." She recommended Ms. McCrea could "return to work in a restricted capacity" and then "some time" thereafter, "be able to return to full duty." In September 2014, Dr. Mormile noted that Ms. McCrea "still experiences a significant level of distress" but that nonetheless, Dr. Mormile "recommended that Ms. McCrea be allowed to return to work" that month, on a limited duty basis initially, and then within 120 days, be returned to full duty status. In her third and final treatment update dated January 2015, Dr. Mormile recommended that Ms. McCrea be returned to full duty status "as soon as possible," beginning with a part-time work schedule and "Gradual Exposure Therapy"—"sleeping in a secured area; limited/gradual exposure to male co[-]workers in the firehouse where the alleged assault occurred."

While the Board acknowledged Dr. Mormile's assessments and recommendation, it noted that Dr. Mormile's assessment that Ms. McCrea could return to duty, with various limitations including to limit Ms. McCrea's anxiety, stress, and interactions with her co-workers, is incompatible with the essential duties of a firefighter who must work safely and effectively with a team. We conclude the Board did not err in concluding that the work limitations recommended by Dr. Mormile contradict her overall recommendation that Ms. McCrea be returned to full duty status. The Board did not err in crediting Dr. Morote's assessment over that of Dr. Mormile.

**B. The Board did not err in classifying Ms. McCrea's mental illness as non-POD.**

The PFRDA, which is recognized as the workers' compensation plan for uniformed members of the District, provides compensation for disabling injuries.[1] *O'Rourke v. District of Columbia Police & Firefighters' Ret. & Relief Bd.*, 46 A.3d 378, 389 (D.C. 2012). In doing so, PFRDA precludes other civil remedies that may otherwise be available, such as remedies resulting from suits for common law

---

[1] Although the language regarding coverage of injuries in the PFRDA and the Workers' Compensation Act differs, the two are "conceptually close" and have been construed as the same standard. *Nunnally, supra*, 184 A.3d at 862 (citation omitted).

torts. *Nunnally, supra*, 184 A.3d at 859. "This reflects the public policy trade-off implicit in workers' compensation statutes"—"swift and certain compensation" for the loss of one's "right to sue in court." *Id*. (citation and quotation marks omitted).

The PFRDA defines a compensable injury as a disabling injury incurred "in the performance of duty." § 5-710 (a). We have previously held that mental illness claims that are the result of workplace sexual harassment are "unrelated to any work task," and cannot be an injury "arising out of . . . employment" and therefore are not compensable as injuries incurred in the POD. *See Underwood, supra*, 665 A.2d at 634, 637. "[S]exual harassment is not 'a risk involved in or incidental to' employment," is "altogether unrelated to any work task," and therefore cannot statutorily be an injury "arising out of" employment. *Id*. at 634 (citation omitted).

In our recent decision *Nunnally*, we agreed with the Board that *Underwood* was controlling in Lt. Nunnally's case for the same "significant policy consideration[s]" discussed in *Underwood*.[2] *Nunnally, supra*, 184 A.3d at 859

---

[2] In *Nunnally*, Lt. Nunnally of the Metropolitan Police Department filed an internal complaint against her supervisor for sexual harassment. *Nunnally, supra*, 184 A.3d at 857. After an investigation, MPD fired the supervisor. *Id*. Three years later, Lt. Nunnally reported to the Clinic that she had suffered several years

(continued . . .)

(quoting *Underwood, supra*, 665 A.2d at 637). The PFRDA provides an exclusive remedy for injuries within the employer's scope, and therefore preempts claims based on the same alleged injuries. *Id*. at 861. The concern of this court has been the ability of sexual harassment "victims to obtain full and appropriate relief, particularly under tort theories—assault, infliction of emotional distress, defamation, battery, invasion of privacy, and the tort of 'outrage' among others— that typically accompany a plaintiff's" sexual assault claim. *Id*. at 860. We have explained that if a uniformed member victim of sexual harassment was to be compensated under § 5-710 for injuries incurred in the POD, then the victim "would be forced to," *id*. at 861 (citing *Underwood, supra*, 665 A.2d at 637-38), settle for a wholly administrative remedy for a personal injury, which is not aligned with "the kind of injury involved," *Underwood, supra*, 665 A.2d at 630, 637-38. In *Nunnally*, we held that workers' compensation for injuries from workplace sexual harassment "would frustrate implementation of the Human

---

(…continued)

of workplace abuse and stress related to the sexual harassment and to retaliation for reporting it. *Id*. The Clinic recommended, and the Board accepted the Clinic's recommendation, that Lt. Nunnally be retired as disabled, as Lt. Nunnally was incapacitated from further duty. *Id*. The Board reasoned that, even viewing Lt. Nunnally's allegations in the light most favorable to her, it was foreclosed by *Underwood, supra*, 665 A.2d 621, from classifying Lt. Nunnally's injuries as incurred in the POD. *Nunnally, supra*, 184 A.3d at 858. We ultimately agreed with the Board that *Underwood* is controlling in Lt. Nunnally's case and discussed the public policy implications behind declining to compensate an emotional or mental injury as a result of workplace sexual harassment. *Id*. at 857.

Rights Act, the local human rights law," and would preclude sexual harassment victims from obtaining full and appropriate relief, particularly under tort theories. *Nunnally, supra*, 184 A.3d at 860 (citation and internal quotation marks omitted). Compensating a uniformed member victim, like Lt. Nunnally, under the PFRDA would not only frustrate implementation of other forms of relief but would not allow for just compensation to a victim due to the "severe cap on allowable recovery" and preclude further recovery, "even for punitive damages." *Underwood, supra*, 665 A.2d at 637-38. For the same reasons, Ms. McCrea's injury is not compensable as an injury incurred in the POD.

Further, the Board possesses expertise on a set of "usual impairments that lead to" disability retirement that are typically based on physical injuries incurred in the line of duty. *Id*. at 637. That is not to say the Board does not also address claims attributable to mental illness,[3] but claims attributable to mental illness are not typically based on sexual harassment, but rather, may be based on PTSD or depression claims following trauma in the line of duty—e.g., the attacks on September 11, 2001. Regardless, there is no justification for limiting disability

---

[3] *See e.g., Pierce v. District of Columbia Police & Firefighters' Ret. & Relief Bd.*, 882 A.2d 199, 201-02 (D.C. 2005) (discussing a police officer's disability retirement based on a diagnosis of major depressive disorder).

claims for sexual harassment to the Board when other like claims "can proceed directly to court, and when [the Board] cannot offer special expertise making it a more suitable forum." *Id*.

Sexual assault by a co-worker, like sexual harassment, where it occurs on the job, has nothing to do with "and cannot be justified by reference to, any task an employee is called upon to perform, even if the persons involved work together and have a supervisor-supervisee relationship." *Id*. at 634. Mental illness resulting from an alleged incident of workplace sexual assault by co-workers cannot be classified as an injury that arose from employment because it is not related to any foreseeable task that an employee is called up to perform.[4] *See id*. The concern that we had in *Nunnally* regarding a victim's ability to obtain the appropriate relief also applies in the context of sexual assault. Therefore, compensating a uniformed member victim of sexual assault by classifying his or her injury as an injury incurred in the POD and awarding disability compensation in lieu of typical

---

[4] Our analysis is premised on the factual context of workplace sexual assault, wherein a member is assaulted by a co-worker, a supervisor, or another individual employed by the Department that may interact with the member on a professional basis. Our holding does not extend to incidents of sexual assault perpetrated during the course of employment as a member of the Department by any individual not employed by the Department, or for example, during the course of an emergency response mission.

remedies obtained following tort claims for the same or similar conduct would be forcing the member to settle for a remedy that was not intended to compensate the type of injury incurred. *See Nunnally, supra*, 184 A.3d at 861 (citing *Underwood, supra*, 665 A.2d at 637-38). Although the Board is well-equipped to assess more common impairments that lead to disability based on injuries in the line of duty, it does not possess the expertise to address claims of mental illness that result from an incident outside of the member's essential duty functions.[5] *See Underwood, supra*, 665 A.2d at 637.

We conclude that sexual assault by a co-worker is analogous to sexual harassment for the reasons set forth in *Nunnally*. We hold that the rationales set forth in *Nunnally* and *Underwood* extend to claims of workplace sexual assault.[6]

---

[5] *See, e.g.*, *Newell-Brinkley v. Walton*, 84 A.3d 53, 57-59 (D.C. 2014) (discussing a police officer's disability retirement based on high blood pressure and an on-the-job back injury); *Sandula v. District of Columbia Police & Firefighters' Ret. & Relief Bd.*, 979 A.2d 32, 33 (D.C. 2009) (determining a police officer's disability retirement based on an asthma diagnosis); *Bausch v. District of Columbia Police & Firefighters' Ret. & Relief Bd.*, 926 A.2d 125, 126-27 (D.C. 2007) (deciding a firefighter's disability retirement for back and knee injuries).

[6] To the extent our dissenting colleague finds the sexual harassment that occurred in *Nunnally* distinguishable from the sexual assault that allegedly occurred in this case because of the severity and seemingly criminal nature of the act in this case, we respectfully disagree. Sexual harassment can take various forms, many of which may be criminally punishable. There are several examples of behaviors that "could lead to unlawful sexual harassment if found to be

(continued . . .)

Therefore, mental illness claims that are the result of workplace sexual assault are not compensable under the PFRDA as injuries incurred in the POD.

### III.    Conclusion

Substantial evidence in the record supports the Board's conclusion that Ms. McCrea's mental illness, which was the result of an alleged sexual assault, prevents her from performing the essential tasks of a firefighter.  Therefore, she is disabled within the meaning of the statute.  The Board did not err in determining that Ms. McCrea's injury was not incurred in the POD.

Contrary to our dissenting colleague's position, declining to classify Ms. McCrea's injury as POD, is not a "punish[ment]" but rather, an opportunity for her

---

(…continued)

pervasive," including "[a]sking repeatedly for a date" or "[w]riting unwanted letters or poems," which may constitute stalking; "[o]ffering threats if sexual favors are not provided," which may constitute threatening; and "[g]rabbing, kissing, or fondling in a forcible manner; and/or [i]nitiating sexual assault and rape," which may constitute sexual assault and/or rape.  ROBERT J. NOBILE, GUIDE TO EMPLOYEE HANDBOOKS § 5:20 (2018).  The Equal Employment Opportunity Commission has also defined harassment as "[o]ffensive conduct" including "physical assaults" and "[t]he harasser can be the victim's supervisor, a supervisor in another area, an agent of the employer, a co-worker, or a non-employee."  U.S. EQUAL EMP'T OPPORTUNITY COMM'N, HARASSMENT, available at https://www.eeoc.gov/laws/types/harassment.cfm.

to seek a more appropriate remedy for her injuries. Ms. McCrea can bring a suit for her injuries under common law tort theories or any other remedy that she may be entitled to. Moreover, the record reflects complaints by Ms. McCrea "that she had been subject to racial and sexual harassment at the Department in the past." Classifying Ms. McCrea's mental illness as an injury not incurred in the POD will also allow her to pursue relief for her discrimination and harassment claims with the appropriate agencies including the D.C. Office of Human Rights and the Equal Employment Opportunity Commission. *See Nunnally, supra*, 184 A.3d at 860-61; *Underwood, supra*, 665 A.2d at 637.

*Affirmed*.

NEBEKER, *Senior Judge*, dissenting: I am unable to convince my colleagues that the precedents they rely on should not apply to the facts of this case because the assault on petitioner, a criminal offence, is vastly different from what is known as sexual harassment. That difference also lies not only in that, but that she is punished by a reduction in an annuity for the rest of her life, as distinguished from workman's compensation in lieu of a common law remedy.

"For private sector workers, injuries from sexual harassment are not compensable in workers' compensation and the courts remain open to common law claims, *Underwood*, 665 A.2d at 638, and a similar rule applies for most public sector workers, *King*, 640 A.2d at 664. Only police officers and firefighters alleging sexual harassment would be relegated to the exclusive and limited remedies of workers' compensation. In the absence of any legislative intent or apparent rationale supporting this distinction, our decision in *Underwood* precludes us from causing this arbitrary and anomalous result. We therefore hold that injuries from sexual harassment are not injuries incurred 'in the performance of duty' under D.C. Code §§ 5–709 (b) and –710 (e)." *Nunnally*, 184 A.3d at 863.

Although the majority has some concerns about police officers and firefighters being treated differently, we also should recognize that the PFDRA

serves as the worker's compensation plan for the District's police officers and firefighters. In light of their differing work environment and experiences, could we not make the argument that a different scheme would be appropriate? Many other jobs do not demand the close quarters and long hours where one is expected to eat and sleep on the job on a regular basis.

While the majority expresses concern that McCrea would be forced to settle for compensation that inadequately addresses her injury, why is the court complacent with McCrea receiving a reduction in an annuity for the remainder of her life because of its characterization of her injury?

Additionally, I continue to struggle with the majority's comparison of sexual harassment and sexual assault. While both types of behavior cause harm to the victim, I believe the resulting trauma can be very different. In looking at the D.C. Human Rights Law, Council's intent is specified as follows, "It is the intent of the Council of the District of Columbia, in enacting this chapter, to secure an end in the District of Columbia to discrimination for any reason other than that of individual merit, including, but not limited to, discrimination by reason of race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, familial status, family responsibilities,

matriculation, political affiliation, genetic information, disability, source of income, status as a victim of an intrafamily offense, and place of residence or business." (D.C. Code § 2–1401.01). While the Human Rights Law may be equipped to handle sexual harassment that occurs in the workplace, a sexual assault committed in the workplace while an employee is in performance of her duties seems altogether different.

What if we alter the facts slightly: What if McCrea was stabbed with a knife instead of being sexually assaulted. This stabbing would constitute assault with the intent to kill. Where would we require her to seek her relief? I am not saying that a stabbing is related to any work task, but I question what remedy would be available to her in light of this holding.